UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FEDERAL TRADE COMMISSION,           )
                                    )
      Plaintiff,             )
                                    )       No. 3:22-cv-00895
v.                                  )
                                    )       JUDGE RICHARDSON
ACRO SERVICES LLC, et al.,          )
                                    )
      Defendants.            )
                                    )

## OPINION AND ORDER

Pending before the Court is Plaintiff Federal Trade Commission's *Ex Parte* Motion for Temporary Restraining Order with Asset Freeze, Appointment of Receiver, Other Equitable Relief, and an Order to Show Cause Why a Preliminary Injunction Should Not Issue (Doc. No. 4, "Motion"). In the Motion, Plaintiff requests several forms of extraordinary relief against three individual defendants—Sean Austin, John Steven Huffman, and John Preston Thompson (the "Individual Defendants")—as well as eight legal entities that the Individual Defendants allegedly own and control, namely, ACRO Services LLC, American Consumer Rights Organization, First Call Processing LLC, Music City Ventures, Inc., Nashville Tennessee Ventures, Inc., Reliance Solutions, LLC, Thacker & Associates Int'l LLC, and Consumer Protection Resources, LLC (each an "Entity Defendant," and collectively, the "Entity Defendants"). The Individual Defendants and Entity Defendants will herein be referred to collectively as "Defendants."

## BACKGROUND

Plaintiff alleges that Defendants have engaged, and continue to engage, in a debt relief scheme whereby Defendants falsely represent to a large number of targeted consumers that

Defendants will eliminate or substantially reduce the respective consumers' credit card debts. Contrary to such representations, according to Plaintiff, Defendants actually do nothing to reduce consumers' debts. Instead, allegedly Defendants simply charge consumers fees and instruct the respective consumers to stop paying their debts and communicating with credit card companies. The alleged result is that consumers not only pay Defendants for fraudulent services but also wind up in more debt and with worse credit scores.

In the Motion, Plaintiff requests an *ex parte* temporary restraining order ("TRO") that, among other things, would (1) prohibit Defendants from operating their debt relief scheme, (2) freeze all of Defendants' assets, and (3) appoint a receiver to take control of the Entity Defendants. Plaintiff contends that it is necessary for this Court to order this drastic relief on an *ex parte* basis because of the risk that Defendants will dissipate assets and/or destroy evidence if they learn of the instant civil action before the TRO is in place. In support of the Motion, Plaintiff has filed a Memorandum of Law (Doc. No. 16), nineteen declarations (Doc. Nos. 7-1 through 7-19), and a Rule 65(b) Certification and Declaration of Counsel (Doc. No. 6) accompanied by 24 attachments (Doc. Nos. 6-1 through 6-24). Plaintiff has also submitted a list of three individuals recommended to the Court for appointment as the receiver Plaintiff is requesting. (Doc. No. 8).

Plaintiff filed its Complaint and Motion on November 7, 2022. (Doc. Nos. 1, 4). Three days later, on November 10, 2022, the Court held an *ex parte* hearing on the Motion at which counsel for Plaintiff only were present, and at which the Court questioned Plaintiff's counsel regarding "Plaintiff's legal theories, authority and requested relief." (*See* Doc. No. 17). At the Court's request, Plaintiff submitted notices containing additional information about the government's investigations of Defendants and the scope and basis of Plaintiff's authority to seek the relief requested in the Motion. (*See* Doc. Nos. 18, 20, 21, 23).

<u>ANALYSIS</u>

On November 16, 2022, the Court held an *ex parte* teleconference with counsel for Plaintiff only, in which the Court announced that it would grant the Motion in part and explained in broad strokes its reasons for doing so. A transcript of that teleconference will appear in the record, and the Court's reasoning as set forth during the teleconference is fully incorporated herein by reference. In this Order, the Court will repeat only a high-level summary of the main points addressed in the teleconference, including the information required to satisfy Fed. R. Civ. P. 65(b)(2).

The Court concludes that all of the relief Plaintiff seeks here—whether sought under Section 13(b) of the FTC Act (15 U.S.C. § 53(b)), or under Section 19 of the FTC Act (15 U.S.C. § 57b)—is subject to the traditional four-factor test for preliminary injunctive relief[1] under Fed. R. Civ. P. 65. Plaintiff argues that its requested preliminary injunctive relief should be evaluated under the more lenient standard prescribed by Section 13(b). *See* 15 U.S.C. § 53(b) ("Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond"); *FTC v. Butterworth Health Corp.*, 121 F.3d 708 (Table), 1997 WL 420543, at *1 (6th Cir. July 8, 1997) (per curiam) ("The FTC need not prove irreparable harm to obtain a preliminary injunction under § 13(b)."). However, the Court concludes that this more lenient standard is inapplicable here because Plaintiff seeks *ex parte* relief, while the more lenient standard by its terms applies only "after notice to the defendant," 15 U.S.C. § 53(b). In other words, for Plaintiff to obtain the benefit

---

[1] The Court uses the term "preliminary injunctive relief" to describe all relief available under Fed. R. Civ. P. 65, including any provisions of a TRO (as sought in this Motion) as well as preliminary injunctions.

of Section 13(b)'s easier-to-satisfy standard for preliminary injunctive relief, it would have to first give notice to Defendants.[2]

Under Rule 65, the Court must consider four factors in determining whether to grant preliminary injunctive relief: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to the opposing party or others; and (4) whether the public interest would be served by the issuance of the injunction. *Doe #11 v. Lee*, — F. Supp. 3d—, 2022 WL 2181800, at *6 (M.D. Tenn. June 16, 2022) (citing *Daunt v. Benson,* 956 F.3d 396, 406 (6th Cir. 2020)). The undersigned previously has explained the standard as follows:

> Generally speaking, "district courts weigh the strength of the four factors against one another," in what is commonly described as a "balancing test." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326 (6th Cir. 2019). However, the inquiry is not a pure balancing test because the second factor—irreparable injury absent the injunction—must be present in order for the Court to issue the requested preliminary injunction. *Id.* at 326–27 (6th Cir. 2019) ("[E]ven the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.' That factor is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit.") (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Thus, "although the extent of an injury may be balanced

---

[2] The Court also finds that the more lenient Section 13(b) standard would not apply to certain forms of preliminary injunctive relief requested by Plaintiff, *regardless of whether notice is given to Defendants*. After the Supreme Court's decision in *AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021), the substantive basis for Plaintiff to obtain an asset freeze must be Section 19, not Section 13(b). *See FTC v. On Point Capital Partners LLC*, 17 F.4th 1066, 1078 (11th Cir. 2021). Plaintiff does not dispute this point. (Doc. No. 16 at 21 (acknowledging that "asset freezes and receiverships are not available in actions premised solely on Section 13(b) of the FTC Act . . . in the wake of *AMG*")). Accordingly, although an asset freeze may be an appropriate form of preliminary injunctive relief to preserve the efficacy of an award of full (permanent) relief under *Section 19* (*i.e.*, consumer redress), it is not an appropriate form of preliminary injunctive relief to preserve the efficacy of an award of final relief under *Section 13(b)*, which after *AMG* "does not grant the Commission authority to obtain equitable monetary relief." 141 S. Ct. at 1352. And it would make little sense to apply the special procedural standard for preliminary injunctive relief in Section 13(b) to forms of substantive relief that are available only under different provisions of the FTC Act. The Court therefore concludes that Plaintiff's request for a temporary asset freeze (and the related request for appointment of a receiver to oversee the asset freeze) are, like the rest of Plaintiff's requested forms of relief, properly evaluated under the traditional Fed. R. Civ. P. 65 standard and not the watered-down Section 13(b) standard for preliminary injunctive relief.

against other factors, the existence of an irreparable injury is mandatory." *Id.* at 327.

"Furthermore, the first factor in many cases is not far from effectively being a prerequisite, inasmuch as 'a finding that there is simply no likelihood of success on the merits is usually fatal.'" *Carter v. Tenn. Dep't of Child.'s Servs.*, No. 22-cv-00247, 2022 WL 1144134, at *2 (M.D. Tenn. Apr. 18, 2022) (brackets omitted) (quoting *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)); *see Daunt*, 956 F.3d at 421 ("Our cases warn that a court must not issue a preliminary injunction where the movant presents no likelihood of merits success.") (brackets omitted) (quoting *La.-Pac. Corp. v. James Hardie Bldg. Prods., Inc.*, 928 F.3d 514, 517 (6th Cir. 2019)).

*Id.* at *7.

Applying the four-factor test, the Court finds that preliminary injunctive relief is appropriate here with respect to some, but not all, of Plaintiff's requested forms of relief. First, the Court finds that Plaintiff has demonstrated a strong likelihood of success on the merits. Plaintiff has submitted numerous declarations, including declarations from allegedly defrauded consumers, demonstrating that Plaintiff is likely to prevail on the merits of its claims that Defendants have violated and continue to violate both Section 5 of the FTC Act and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Pt. 310. (*See* Doc. Nos. 6-1 through 6-24; 7-1 through 7–19). The first factor therefore weighs in favor of Plaintiff. And for purposes of evaluating the remaining factors, the Court assumes that what is likely true, *i.e.,* that Defendants have been defrauding consumers (in violation of the FTC Act and TSR).[3]

Second, the Court finds that Plaintiff has demonstrated that consumers—in whose shoes Plaintiff effectively stands for purposes of seeking preliminary injunctive relief—will suffer

---

[3] That is not to say that later in this litigation, on a more fulsome record and in light of the position(s) asserted by Defendants once they have an opportunity to present their position(s), the Court will conclude that what currently appears likely is in fact true. But having found that at present it is likely that Plaintiff will succeed on the merits of its allegations of fraud on the part of Defendants, it is appropriate for the Court to assume *arguendo* that Plaintiff's substantive allegations are true, for purposes of the three remaining TRO factors.

irreparable injury absent a TRO that grants certain forms of requested relief. Not only will consumers continue to be defrauded, with resulting financial losses and lasting damage to credit scores, but based on Plaintiff's evidence there is a real risk that Defendants may destroy evidence and dissipate assets that otherwise could be used to provide consumer redress. Once evidence is destroyed or funds are dissipated, metaphorically the horse will be out of the barn such that a court award of permanent monetary relief to consumers (in the event that Plaintiff ultimately prevails) may prove uncollectible and thus ultimately futile. For these reasons, the Court finds that Plaintiff has demonstrated irreparable injury to support certain forms of Plaintiff's requested relief, namely: (1) injunctive relief prohibiting future violations of Section 5 of the FTC Act and the TSR; (2) a temporary asset freeze; and (3) appointment of a receiver (who will help the Court to ensure that the asset freeze is successful and that evidence is preserved). In other words, the Court finds a substantial risk of irreparable injury to consumers in the absence of any of these three requested measures. With respect to these forms of relief, the second factor weighs in favor of Plaintiff. However, the Court does *not* find that irreparable injury exists to support other forms of relief sought by Plaintiff, such as Plaintiff's requests for expedited discovery and for Plaintiff (as opposed to the Receiver) to be able to immediately access Defendants' business premises and documents; the Court cannot conclude that Plaintiff has established, with respect to any of these measures, a substantial risk of irreparable injury to consumers absent the imposition of such measures. The Court therefore does not find that a temporary restraining order is warranted with respect to such other forms of relief requested by Plaintiff. *See D.T.*, 942 F.3d at 326–27 ("even the strongest showing on the other three factors cannot eliminate the irreparable harm requirement") (internal quotation marks and citation omitted).

Third, the Court finds that, although a TRO that includes the above-referenced three measures would cause significant harm to Defendants in that they will be temporarily prevented from operating their businesses and will have their assets frozen (except to the extent that, as set forth in the Order below, the Individual Defendants will not have all of their assets frozen), this factor does not weigh heavily in Defendants' favor to the extent that they are merely being prohibited from engaging in (a) fraudulent practices that violate the FTC Act and TSR, and (b) financial and monetary transactions involving the fruits of illegal activity. Further, the Court notes that any hardship to Defendants is mitigated by the necessarily short duration of this relief. *See* Fed. R. Civ. P. 65(b)(2) (a temporary restraining order "expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension").

The fourth factor (the public interest) supports issuance of the TRO. This case does not involve a private plaintiff seeking relief that will benefit only that particular party. Rather, Plaintiff is a congressionally created agency tasked with enforcing the congressionally enacted FTC Act; thus, its enforcement of the FTC Act, as well as the TSR (a lawfully promulgated rule) is, at least presumptively, in the public interest; and in any event, it is easy to see how enforcement of those provisions benefits consumers and the public at large. Measures designed to prevent future harm to consumers and ensure the availability of full consumer redress are in the public interest.

Accordingly, after weighing the four factors, the Court finds that on balance a TRO is warranted with respect to the following forms of relief (including ancillary relief needed to make

these forms of relief effective): (1) injunctive relief prohibiting future violations of Section 5 of

the FTC Act and the TSR; (2) a temporary asset freeze;[4] and (3) appointment of a receiver.[5]

Finally, the Court notes that it is fully aware that *ex parte* relief of this nature is an

extraordinary remedy. Indeed, "our entire jurisprudence runs counter to the notion of court action

taken before reasonable notice and an opportunity to be heard has been granted both sides of a

dispute." *Granny Goose Foods, Inc. v. B'hood of Teamsters and Auto Truck Drivers Local No. 70

of Alameda Cnty.*, 415 U.S. 423, 439 (1974). The Court is also cognizant that "ex parte restraining

orders should be limited to preserving the status quo only for so long as is necessary to hold a

hearing." *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993).[6] For these

---

[4] If the current scope of the asset freeze (*i.e.*, all of Defendants' assets) proves to be broader than necessary to secure sufficient funds for full consumer redress under Section 19 in this case, the Court is amenable to reducing the scope of the assets covered by the freeze upon proper proof offered by Defendants at the preliminary injunction hearing. *See FTC v. Zurixx, LLC*, No. 19-cv-713, 2021 WL 5179139, at *6–8 (D. Utah Nov. 8, 2021) (noting that, after *AMG*, the scope of an asset freeze should be tailored to "the individualized consumer redress damages [available] under Section 19," as distinguished from the "gross revenue damages [previously available] under Section 13(b)").

[5] The Court wishes to emphasize that the receiver appointed in this case, like any receiver, is an "officer of the court" appointed only "to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). Because "the receiver's authority is wholly determined by the orders of the appointing court," 13 *Moore's Federal Practice* § 66.03[2] (3d ed. 2017), the receiver in this case will have only such powers as are defined in (and limited by) the Order below. Moreover, the fact that the receiver is an officer of this Court dictates the denial of some of the provisions Plaintiff has requested for inclusion in the TRO—namely, provisions written as if the receiver were a litigating party, such as Plaintiff's requested provision that the receiver be authorized to obtain "discovery."

One important limitation that the Court's Order places on the receiver in this case is that the receiver may not provide to Plaintiff or any state or federal civil or criminal law enforcement agency any books, records, documents, accounts, or other property belonging to the Defendants that come into the receiver's possession, unless Plaintiff or the relevant law enforcement agency first applies to this Court for an order authorizing such disclosure consistent with the Fourth Amendment and any other applicable laws, and this Court grants the request. *See SEC v. Hilton*, No. 12-81033-cv, 2012 WL 12869520 (S.D. Fla. Oct. 2, 2012) (noting potential Fourth Amendment issues raised by imposing receiverships in the context of agency enforcement investigations).

[6] This principle counsels the Court to ensure that, if it does determine that a TRO is necessary, the particular provisions in the TRO are no broader than necessary to preserve what the Court considers the "status quo." The Court has endeavored herein to follow that principle.

reasons, *ex parte* seizure orders under Fed. R. Civ. P. 65 are permissible only if a plaintiff "show[s] that defendants would have disregarded a direct court order and disposed of the [evidence] within the time it would take for a hearing," which assertion the plaintiff must support "by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history." *Id.* at 650–52. The Court finds that this standard is satisfied here, and that *ex parte* relief including an asset freeze and appointment of a receiver is therefore warranted, because Plaintiff has both (1) submitted evidence that Defendants previously violated discovery obligations and a court order in civil litigation (Doc. No. 6 at 5–7; Doc. Nos. 6-8, 6-9);[7] and (2) demonstrated that, in Plaintiff's experience, persons engaged in fraudulent schemes similar to the one alleged here have a history of destroying evidence and dissipating assets (Doc. No. 6 at 12–15).

For these reasons, and those explained more fully during the November 16, 2022 teleconference, the Motion is hereby **GRANTED IN PART AND DENIED IN PART**, and the Court hereby now orders as follows:

<u>ORDER</u>

## I.      PROHIBITED BUSINESS ACTIVITIES

Based on the current record, the Court finds that Plaintiff has demonstrated that Defendants likely have violated, and will likely continuing to violate, Section 5 of the FTC Act and the TSR.

---

[7] Specifically, Plaintiff has submitted filings from a recent civil lawsuit in the U.S. District Court for the Northern District of West Virginia, captioned *Mey v. Castle Law Group, PC*, No. 5:19-cv-185. In the *Mey* litigation, the court found that the same three Individual Defendants and some of the same Entity Defendants as here violated their discovery obligations and a court order, and ultimately entered a default judgment against them. (Doc. Nos. 6-8, 6-9). The Court recognizes that the *Mey* litigation did not involve all of the Entity Defendants. But given Plaintiff's allegations and preliminary showing that the Entity Defendants are essentially interchangeable shell companies operated by the Individual Defendants, evidence regarding the conduct of all three of the Individual Defendants plus some of the Entity Defendants in the *Mey* litigation is sufficient to meet Plaintiff's burden to justify an *ex parte* TRO under *Depinet* in this case.

To prevent future violations of Section 5 of the FTC Act and/or the TSR, the Court orders as follows. Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods or services, are temporarily restrained and enjoined from:

    A.    Misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact, including, but not limited to:

        1.    That Defendants can or will eliminate or substantially reduce consumers' credit card debts;

        2.    That consumers are not responsible for paying a fee charged to their credit card by Defendants because the fee is part of the overall debt that Defendants will eliminate;

        3.    That consumers' credit scores will improve or return to normal after Defendants provide their Debt Relief Service;[8] or

        4.    That Defendants are affiliated with any banks, credit card associations, or credit reporting agencies.

    B.    Charging or receiving money or other valuable consideration for the performance of any Debt Relief Service before such service is fully performed;

---

[8] For purposes of this Order, "Debt Relief Service" is defined to mean any service, plan, or program represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt or obligation between a person and one or more creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to a creditor or debt collector.

C.     Failing to disclose, clearly and conspicuously, to consumers material terms and conditions of Defendants' Debt Relief Services, including but not limited to:

1.     That by failing to make timely payments on their credit cards, the amount of money that consumers owe on their credit cards may increase due to the accrual of fees and interest;

2.     That by failing to make timely payments on their credit cards, consumers may be subject to collections or being sued by creditors or debt collectors; or

3.     That by failing to make timely payments on their credit cards, consumers' creditworthiness will likely be adversely affected.

## II.     ASSET FREEZE

Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.     Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets[9] that are:

1.     owned or controlled, directly or indirectly, by any Defendant;

2.     held, in part or in whole, for the benefit of any Defendant;

3.     in the actual or constructive possession of any Defendant; or

4.     owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset

---

[9] For purposes of this Order, "Asset" means any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held.

protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant.

B.    Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or subject to access by any Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order;

C.    Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Entity Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or of which any Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this Order was signed, an authorized signor; or

D.    Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant.

The Assets affected by this Section shall include all Assets of Defendants as of the time this Order is entered, with the qualification that each Individual Defendant shall be permitted to withdraw up to $2,000 from each bank account held by that Individual Defendant while this Order is in place. That is, up to $2,000 per bank account held by each Individual Defendant is exempted from the asset freeze established by this Order. The Court finds that such an exemption is necessary as a reasonable attempt by the Court (which does not yet know, for example, the due date or size of any mortgage or rent payments owed by the Individual Defendants or the number or reasonable needs of the Individual Defendants' dependents) to ensure that each Individual Defendant is able to pay for reasonable living expenses pending a preliminary injunction hearing in this case. Should

the amount of assets exempted from the asset freeze by this paragraph prove insufficient for any Individual Defendant to meet his reasonable living expenses between now and the preliminary injunction hearing, such Individual Defendant may apply to the Court for a modification to unfreeze additional funds, which shall be granted only upon a specific, substantial and credible showing of such need.

In addition, the Court recognizes that Defendants will require unfrozen funds to pay for counsel in this case at the preliminary injunction hearing and beyond. Defendants may apply to the Court to unfreeze a reasonable amount of funds to pay for the services of counsel. The Court will consider any such request and expects to unfreeze a reasonable amount of attorney's fees once a request is made.

This Section does not prohibit any transfers to the Receiver specifically required by this Order.

## III.    DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES

Any financial or brokerage institution, Electronic Data Host,[10] credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) that:

(a) has held, controlled, or maintained custody, through an account or otherwise, of any document on behalf of any Defendant or any Asset that has been: owned or controlled, directly or indirectly, by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant; or owned or controlled by, in the actual or

---

[10] As used in this Order, the term "Electronic Data Host" means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant;

(b) has held, controlled, or maintained custody, through an account or otherwise, of any document or Asset associated with credits, debits, or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

(c) has extended credit to any Defendant, including through a credit card account, shall:

A.     Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such document or Asset, as well as all documents or other property related to such Assets, except by further order of this Court; provided, however, that this provision does not prohibit an Individual Defendant from incurring charges on a personal credit card established prior to entry of this Order, up to the pre-existing credit limit, and provided that each Individual Defendant may withdraw up to $2,000 per bank account as set forth in Section II of this Order;

B.     Deny any person, except the Receiver, access to any safe deposit box, commercial mailbox, or storage facility that is titled in the name of any Defendant, either individually or jointly, or otherwise subject to access by any Defendant;

C.     Provide the Receiver, within four (4) days of receiving a copy of this Order, a sworn statement setting forth, for each Asset or account covered by this Section:

1.     The identification number of each such account or Asset;

2.     The balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and

3.     The identification of any safe deposit box, commercial mailbox, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant; and

D.     Upon request, promptly provide the Receiver with copies of all records or other documents pertaining to each account covered by this Section or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

Provided, however, that this Section does not prohibit any transfers to the Receiver specifically required by this order.

## IV.     NON-INTERFERENCE WITH RESPECT TO FOREIGN ASSETS

Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, including, but not limited to sending any communication or engaging in any other act,

directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement.

## V.    PRESERVATION OF RECORDS

Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, documents that relate to: (1) the business, business practices, Assets, or business or personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant.

## VI.    REPORT OF NEW BUSINESS ACTIVITY

Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## VII.   TEMPORARY RECEIVER

S. Gregory Hays is appointed as temporary receiver of the Entity Defendants (the "Receiver") with full powers of an equity receiver, except as otherwise specified in this Order. The Receiver shall be the agent solely of this Court in performing the duties of the temporary receiver under this Order, and the Receiver's authority shall be wholly determined by the orders of this Court.

## VIII.   DUTIES AND AUTHORITY OF RECEIVER

As the agent of this Court, the Receiver is hereby directed and authorized to accomplish the following:

A.      Assume full control of the Entity Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any Entity Defendant from control of, management of, or participation in, the affairs of the Entity Defendant;

B.      Take exclusive custody, control, and possession of all Assets and documents of, or in the possession, custody, or under the control of, any Entity Defendant, wherever situated;

C.      Take exclusive custody, control, and possession of all documents or Assets associated with credits, debits, or charges made on behalf of any Entity Defendant, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

D.      Conserve, hold, manage, and prevent the loss of all Assets of the Entity Defendants, and perform all acts necessary or advisable to preserve the value of those Assets. The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter

due or owing to the Entity Defendants. The Receiver shall have full power to sue for, collect, and receive, all Assets of the Entity Defendants and of other persons or entities whose interests are now under the direction, possession, custody, or control of, the Entity Defendants. Provided, however, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer's debt to the Entity Defendants has resulted from the deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior Court approval;

E.      Obtain, conserve, hold, manage, and prevent the loss of all documents of the Entity Defendants, and perform all acts necessary or advisable to preserve such documents. The Receiver shall: divert mail; preserve all documents of the Entity Defendants that are accessible via electronic means (such as online access to financial accounts and access to electronic documents held onsite or by Electronic Data Hosts, by changing usernames, passwords or other log-in credentials; take possession of all electronic documents of the Entity Defendants stored onsite or remotely; and take whatever steps necessary to preserve all such documents.

F.      The Receiver is expressly *not* authorized under this Order to provide to Plaintiff or any state or federal civil or criminal law enforcement agency any books, records, documents, accounts, or other property owned by, or in the possession of, the Entity Defendants or their agents. To the extent that Plaintiff or any state or federal civil or criminal law enforcement agency desires access to such materials, they may apply to this Court for an order authorizing such disclosure consistent with the Fourth Amendment and any other applicable laws;

G.      Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

H.      Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, and to incur, or authorize the making of, such agreements as may be necessary and advisable in discharging his duties as Receiver. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Entity Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Entity Defendants, such as rental payments;

I.      Take all steps necessary to secure and take exclusive custody of each location from which the Entity Defendants operate their businesses. Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) securing the location by changing the locks and alarm codes and disconnecting any internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location; and (2) requiring any persons present at the location to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or Assets of the Entity Defendants. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security. Nothing herein shall limit Plaintiff from coordinating with the appropriate law enforcement agencies to enable the Receiver to enter the Entity Defendants' premises;

J.      Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Defendants;

K.      Enter into and cancel contracts and purchase insurance as advisable or necessary;

L.     Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers who have transacted business with the Entity Defendants;

M.     Make an accounting, as soon as practicable, of the Assets and financial condition of the receivership and file the accounting with the Court and deliver copies thereof to all parties;

N.     Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Entity Defendants, or to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

O.     Open one or more bank accounts at designated depositories for funds of the Entity Defendants. The Receiver shall deposit all funds of the Entity Defendants in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts. The Receiver shall serve copies of monthly account statements on all parties;

P.     Maintain accurate records of all receipts and expenditures incurred as Receiver;

Q.     Suspend business operations of the Entity Defendants to the extent that, in the judgment of the Receiver, such operations cannot be continued legally and profitably; and

R.     To the extent that in the Receiver's judgment the business operations cannot be continued legally and profitably, take all steps necessary to ensure that any of the Entity Defendants' web pages or websites relating to the activities alleged in the Complaint cannot be accessed by the public, or are modified for consumer education and/or informational purposes, and take all steps necessary to ensure that any telephone numbers associated with the Entity Defendants cannot be accessed by the public, or are answered solely to provide consumer education or information regarding the status of operations.

## IX.     TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

Defendants and any other person, with possession, custody or control of property of, or records relating to, the Entity Defendants shall, upon notice of this Order by personal service or otherwise, fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and documents of the Entity Defendants and immediately transfer or deliver to the Receiver possession, custody, and control of, the following:

A.     All Assets held by or for the benefit of the Entity Defendants;

B.     All documents or Assets associated with credits, debits, or charges made on behalf of any Entity Defendant, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

C.     All documents of or pertaining to the Entity Defendants;

D.     All computers, electronic devices, mobile devices and machines used to conduct the business of the Entity Defendants;

E.     All Assets and documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Entity Defendants; and

F.     All keys, codes, user names and passwords necessary to gain or to secure access to any Assets or documents of or pertaining to the Entity Defendants, including access to their business premises, means of communication, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property.

In the event that any person or entity fails to deliver or transfer any Asset or document, or otherwise fails to comply with any provision of this Section, the Receiver may file an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation.

## X. PROVISION OF INFORMATION TO RECEIVER

The Receiver may request information from Defendants as needed to carry out his duties under this Order, including but not limited to:

A. Completed financial statements on the forms attached to this Order as **Attachment A** (Financial Statement of Individual Defendant) for each Individual Defendant, and **Attachment B** (Financial Statement of Corporate Defendant) for each Entity Defendant;

B. Completed **Attachment C** (IRS Form 4506, Request for Copy of Tax Return) for each Individual Defendant and each Entity Defendant;

C. A list of all Assets and accounts of the Entity Defendants that are held in any name other than the name of an Entity Defendant, or by any person or entity other than an Entity Defendant; and

D. A list of all agents, employees, officers, attorneys, servants and those persons in active concert and participation with the Entity Defendants, or who have been associated or done business with the Entity Defendants.

Defendants shall provide the Receiver, in a timeframe that is reasonably prompt under the applicable circumstances, any information requested by the Receiver pursuant to this section.

## XI. COOPERATION WITH THE RECEIVER

Defendants, their officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them, and any other person with possession, custody, or control of property of or records relating to the Entity Defendants who receive actual notice of this Order shall fully cooperate with and assist the Receiver. This cooperation and assistance shall include, but is not limited to, providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any keys, codes, user names and passwords required to access any computers, electronic devices,

mobile devices, and machines (onsite or remotely) and any cloud account (including specific method to access account) or electronic file in any medium; advising all persons who owe money to any Entity Defendant that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the Assets and sales of the Entity Defendants.

## XII. NON-INTERFERENCE WITH THE RECEIVER

Defendants, their officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

A.     Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or documents subject to the receivership;

B.     Transacting any of the business of the Entity Defendants;

C.     Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Entity Defendants; or

D.     Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XIII. STAY OF ACTIONS

Except by leave of this Court, during the pendency of the receivership ordered herein, Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order are hereby

enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or documents of the Entity Defendants, including, but not limited to:

A. Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, or of any similar insolvency proceeding on behalf of the Entity Defendants;

B. Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Entity Defendants, including the issuance or employment of process against the Entity Defendants, except that such actions may be commenced if necessary to toll any applicable statute of limitations; or

C. Filing or enforcing any lien on any asset of the Entity Defendants, taking or attempting to take possession, custody, or control of any Asset of the Entity Defendants; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Entity Defendants, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise.

Provided, however, that this Order does not stay: (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XIV.   COMPENSATION OF RECEIVER

The Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Entity Defendants. The Receiver shall file with the Court and serve on the parties

periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XV.    RECEIVER'S BOND

The Receiver need not file any bond with the Clerk of Court at this time. Pursuant to 28 U.S.C. § 754, the Court has discretion to require a receiver to post a bond in appropriate circumstances. *Carney v. Beracha*, 996 F. Supp. 2d 56, 65 (D. Conn. 2014); *Police & Fire Dep't Sys. of City of Detroit v. Orchard Park, LLC*, No. C 08–5316, 2009 WL 481266, at *6 (N.D. Cal. Feb. 24, 2009). In its discretion, the Court determines that no bond is required at this time due to the short-term nature of this Order and the lack of evidence before the Court at this juncture from which to determine the appropriate bond amount. However, the Court will revisit the issue of a receiver's bond at the preliminary injunction hearing. At that time, Defendants may argue in favor of any receiver's bond they believe to be appropriate.

## XVI.    IMMEDIATE ACCESS TO BUSINESS PREMISES AND RECORDS

A.    In order to allow the Receiver to preserve Assets and receive information relevant to the receivership, the Receiver and the Receiver's representatives, agents, contractors, and assistants, shall have immediate access to the business premises and storage facilities, owned, controlled, or used by the Entity Defendants. Such locations include, but are not limited to, 503 Ligon Drive, Suite A, Nashville, TN 37204, and any offsite location or commercial mailbox used by the Entity Defendants. The Receiver may exclude Defendants, Entity Defendants, and their employees from the business premises. The Receiver shall not permit Plaintiff to have access to the Entity Defendants' business premises and storage facilities, absent further order of this Court.

B.      The Receiver and the Receiver's representatives, agents, contractors, and assistants, are authorized to remove documents from the Entity Defendants' premises in order that they may be inspected, inventoried, and copied, provided however that any such documents may not be provided to Plaintiff or any law enforcement agency absent further order of this Court;

C.      The Receiver and the Receiver's representatives, agents, contractors, and assistants, are authorized to obtain the assistance of federal, state and local law enforcement officers as they deem necessary to effect service and to implement peacefully the provisions of this Order;

D.      If any documents, computers, or electronic storage devices containing information related to the business practices or finances of the Entity Defendants are at a location other than those listed herein, including personal residence(s) of any Defendant, then, promptly upon receiving notice of this order, Defendants and Entity Defendants shall produce to the Receiver all such documents, computers, and electronic storage devices, along with any codes or passwords needed for access. In order to prevent the destruction of computer data, upon service of this Order, any such computers or electronic storage devices shall be powered down in the normal course of the operating system used on such devices and shall not be powered up or used until produced for copying and inspection; and

E.      If any communications or records of any Entity Defendant are stored with an Electronic Data Host, such Entity Defendant shall, promptly upon receiving notice of this order, provide the Receiver with the username, passwords, and any other login credential needed to access the communications and records, and shall not attempt to access, or cause a third-party to attempt to access, the communications or records.

## XVII.  DISTRIBUTION OF ORDER BY DEFENDANTS

Defendants shall, in a timeframe that is reasonably prompt under the circumstances, provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign,

member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Defendant, and shall, within ten (10) days from the date of entry of this Order, provide Plaintiff and the Receiver with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the Order. Furthermore, Defendants shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with them to disregard this Order.

## XVIII. SERVICE OF THIS ORDER

Copies of this Order as well as the Motion for Temporary Restraining Order and all other pleadings, documents, and exhibits filed contemporaneously with that Motion (other than the complaint and summons), may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by the Receiver, by any law enforcement agency, or by private process server, upon any Defendant or any person (including any financial institution) that may have possession, custody or control of any Asset or document of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure. For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## XIX.   PRELIMINARY INJUNCTION HEARING

Pursuant to Fed. R. Civ. P. 65(b), Defendants shall appear before this Court on the **1st day of December, 2022, at 8:30 a.m.**, to show cause, if there is any, why this Court should not enter a preliminary injunction, pending final ruling on the Complaint against Defendants, enjoining the

violations of the law alleged in the Complaint, continuing the freeze of their Assets, continuing the receivership, and imposing such additional relief as may be appropriate.

XX.    BRIEFS AND AFFIDAVITS CONCERNING PRELIMINARY INJUNCTION

A.    Defendants shall file with the Court and serve on Plaintiff's counsel any answering pleadings, affidavits, motions, expert reports or declarations, or legal memoranda no later than two (2) days prior to the order to show cause hearing scheduled pursuant to this Order. Plaintiff may file responsive or supplemental pleadings, materials, affidavits, or memoranda with the Court and serve the same on counsel for Defendants no later than one (1) day prior to the order to show Cause hearing. Such affidavits, pleadings, motions, expert reports, declarations, legal memoranda or oppositions must be served by personal or overnight delivery, facsimile or email, and be received by the other party or parties no later than 5:00 p.m. (Central Time) on the appropriate dates set forth in this Section.

B.    The Court will determine whether to hold an evidentiary hearing on Plaintiff's request for a preliminary injunction. The question of whether this Court should enter a preliminary injunction, and the scope of any such preliminary injunction, shall be resolved on the pleadings, declarations, exhibits, and memoranda filed by, and (if a hearing is held) oral argument of, the parties. Live testimony shall be heard only on further order of this Court, upon motion setting forth the name, address, and telephone number of each proposed witness, a summary revealing the substance of each proposed witness's expected testimony, and an explanation of why the taking of live testimony would be helpful to the Court.

XXI.    DURATION OF THE ORDER

This Order shall expire fourteen (14) days from the date of entry noted below unless, within such time, the Order is extended for an additional period pursuant to Fed. R. Civ. P. 65(b)(2).

## XXII. RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this matter for all purposes.

SO ORDERED, this 21st day of November, 2022, at _5:00_ p.m.

_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE