UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 3:22-cv-00895-EJR-JSF |
| Plaintiff, | MOTION FOR DEFAULT JUDGMENT AGAINST THE ENTITY DEFENDANTS |
| v. | |
| ACRO SERVICES LLC, *et al.*, | |
| Defendants. | |

Plaintiff Federal Trade Commission (the "FTC") respectfully moves for entry of default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), against the following eight Defendants: ACRO Services LLC, also d/b/a Capital Compliance Solutions ("ACRO Services"); American Consumer Rights Organization, also d/b/a Tristar Consumer Law Organization; First Call Processing LLC ("First Call Processing"); Music City Ventures, Inc., also d/b/a Tri Star Consumer Group ("Music City Ventures"); Nashville Tennessee Ventures, Inc., also d/b/a Integrity Resolution Group ("Nashville Tennessee Ventures"); Reliance Solutions, LLC, also d/b/a Reliance Services, LLC ("Reliance Solutions"); Thacker & Associates Int'l LLC ("Thacker & Associates"); and Consumer Protection Resources, LLC ("Consumer Protection Resources") (collectively, the "Entity Defendants").

I.   **INTRODUCTION**

The Complaint alleges that the Entity Defendants, managed as a common enterprise by Sean Austin, John Steven Huffman, and John Preston Thompson (collectively, the "Individual Defendants"), operated a deceptive debt relief telemarketing scheme that falsely promised to eliminate or substantially reduce consumers' credit card debt.  (*See* Doc. No. 1 ("Compl.") ¶¶ 23-

1

50.) Based on the substantial evidence presented by the FTC, this Court found a likelihood of success on the merits and entered a temporary restraining order ("TRO") to enjoin the Defendants' unlawful practices, and the Court subsequently entered a Stipulated Preliminary Injunction. (Doc. Nos. 26, 27, 49.) The Individual Defendants agreed to stipulated orders for permanent injunction, which the Court entered on April 28, 2023 (collectively, the "Individual Stipulated Orders"). (*See* Doc. Nos. 82-84.) The Entity Defendants failed to respond to the Complaint and are now in default. The FTC now files this Motion for Default Judgment Against the Entity Defendants seeking a monetary judgment for the consumer injury caused by the Entity Defendants' violations of law and permanent injunctive relief that mirrors the injunctive relief imposed on the Individual Defendants. The FTC's proposed final default order ("Proposed Order") is attached hereto as Exhibit A.

## II. PROCEDURAL HISTORY

On November 7, 2022, the FTC filed its Complaint alleging that Defendants violated Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, by operating a deceptive debt relief telemarketing scheme. The FTC moved *ex parte* for a Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, and Other Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue. (Doc. No. 4.) The Court granted the requested TRO in part on November 21, 2022, finding that the FTC was likely to succeed on the merits that Defendants were defrauding consumers in violation of the FTC Act and the TSR and that absent injunctive relief consumers faced a "substantial risk of irreparable injury." (Doc. No. 26 at 6.) The Court granted extraordinary relief including freezing Defendants' assets and appointing a receiver. Subsequent to the TRO, the Individual Defendants stipulated to a preliminary

injunction. (Doc. No. 47.) On December 13, 2022, the Court entered the Stipulated Preliminary Injunction, which included an asset freeze and the appointment of a receiver over the entities. (Doc. No. 49.)

The FTC has since entered into settlement agreements with the Individual Defendants. On April 25, 2023, the FTC filed an Unopposed Motion for Entry of Stipulated Orders for Permanent Injunction and Monetary Judgement as to Defendants Sean Austin, John Steven Huffman, and John Preston Thompson. (Doc. 79.) On April 28, 2023, the Court granted the motion resolving the case as to the Individual Defendants. (Doc. 81.)

Only claims against the Entity Defendants remain. The Entity Defendants were properly served with the summons and Complaint but failed to answer or otherwise respond to their respective deadlines. (*See* Doc. Nos. 30-39, 59; Doc. No. 67-1 (Bakowski Decl.) ¶¶ 4-5.) To date, the Entity Defendants have not retained counsel, answered, appeared, or otherwise responded to any communication, pleading, or notice in this case. Accordingly, the FTC moved for entry of default against the Entity Defendants pursuant to Fed. R. Civ. P. 55(a), and the Clerk of Court granted the FTC's motion. (Doc. Nos. 85, 92.) The Court's granting of this motion would resolve the claims against all Defendants.

## III. THE COURT SHOULD ENTER A DEFAULT JUDGMENT AGAINST THE ENTITY DEFENDANTS

Upon the entry of default pursuant to Fed. R. Civ. P. 55(a), the defaulting party is deemed to have admitted all of the well-pleaded allegations of the complaint except those relating to damages. *See Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 878 (S.D. Ohio 2007) (citing *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995)); Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). To be "well-pleaded," a claim must

3

satisfy the requirements of Rule 8(a) of the Federal Rules of Civil Procedure. *I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-cv-00981, 2020 U.S. Dist. LEXIS 146295, at *9 (M.D. Tenn. Aug. 14, 2020). Factual allegations need only be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp v. Twombly,* 550 U.S. 544, 555 (2007). "Although the decision to grant or deny a request for default judgment lies within the court's sound discretion, if the allegations in a complaint are sufficient to support a finding of liability as to the defendant(s), the court should enter judgment." *Luxottica Grp., S.p.A. v. 111 Pit Stop, Inc.*, No. 2:19-cv-00015, 2020 U.S. Dist. LEXIS 132462, at *2 (M.D. Tenn. July 27, 2020) (citing *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006)).

Although the court must ascertain the amount of damages for a default judgment, the court is not required to conduct a hearing, especially where "the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages." *I Love Juice Bar Franchising*, 2020 U.S. Dist. LEXIS 146295 at *9-10 (quoting *Broad. Music, Inc. v. Marler*, No. 1:09-CV-193, 2009 U.S. Dist. LEXIS 106147, at *5 (E.D. Tenn. Nov. 12, 2009)); *see also* Fed. R. Civ. P. 55(b)(2) (noting that a district court "may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."). Additionally, while the FTC's well-pleaded complaint alleges facts sufficient to support the entry of default judgment, courts also may consider additional evidence including affidavits and declarations. *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 111 (6th Cir. 1995) ("Use of affidavits in granting default judgments does not violate . . . due process"); *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011) (adopting report and recommendation considering declaration testimony as well as complaint allegations to

4

determine whether plaintiff stated claims for relief); *Super Stop No. 701, Inc. v. BP Prods. N. Am. Inc.*, Case No. 08-61389-CIV, 2009 U.S. Dist. LEXIS 117495, at *2 n. 4 (S.D. Fla. Dec. 17, 2009) (noting that "unchallenged affidavits are routinely used to establish liability and damages" in default judgments); *Ayers v. Receivables Performance Mgmt., L.L.C.*, No. 2:15-CV-12082, 2016 WL 5402962, at *5 (E.D. Mich. Sept. 28, 2016) (finding it proper to consider plaintiff's affidavit as well as complaint allegations in determining whether plaintiff stated a claim for relief). Here, the Court should enter default judgment without a hearing based on the allegations in the Complaint and the uncontested record evidence that supports the FTC's Proposed Order.

### A. The FTC's Well-Pleaded Allegations Establish that the Entity Defendants Violated Section 5 of the FTC Act

Section 5 of the FTC Act prohibits "deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). Under Section 5, an act or practice is deceptive if it involves: (1) a representation or omission (2) that is likely to mislead consumers acting reasonably under the circumstances and (3) is material. *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630-31 (6th Cir. 2014); *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003). A representation or omission is material "if it is likely to affect a consumer's decision to buy a product or service." *E.M.A. Nationwide*, 767 F.3d at 631. "[E]xpress claims are presumed to be material." *FTC v. E.M.A. Nationwide, Inc.*, No. 1:12-CV-2394, 2013 U.S. Dist. LEXIS 120914, at *10 (N.D. Ohio Aug. 26, 2013), *aff'd*, 767 F.3d 611 (6th Cir. 2014). In evaluating whether a representation or omission is likely to mislead consumers acting reasonably, the "net impression" on the "mind of the ordinary consumer" is what matters. *E.M.A. Nationwide*, 767 F.3d at 631. The Court is not required to find that the Defendants intended to deceive consumers. *Id.*

The allegations of the Complaint establish that the Entity Defendants made numerous material misrepresentations or omissions that were likely to deceive consumers, including:

5

- Falsely promising consumers that if they enroll in Defendants' program, their credit card debt would be eliminated or substantially reduced within 12 to 18 months (*see* Compl. ¶¶ 2-4, 23, 26, 39, 46, 66(a));

- Falsely telling consumers that they were affiliated with a bank, credit card company, or credit reporting agency (*see* Compl. ¶¶ 2, 25, 66(d));

- Falsely telling consumers that the substantial upfront fees charged to their credit cards—typically thousands of dollars—would be later eliminated as part of the debt relief program (*see* Compl. ¶¶ 3-4, 27, 66(b));

- Falsely promising consumers that their credit scores would improve or return to normal after 12 to 18 months of not paying their credit card bills (*see* Compl. ¶¶ 30, 66(c));

- Failing to disclose to consumers that by not making timely payments on their credit cards, the amount of money they would owe may increase due to the accrual of fees and interest (*see* Compl. ¶¶ 29, 46, 70(a));

- Failing to disclose to consumers that by not making timely payments on their credit cards, consumers may be subject to collections or sued by creditors or debt collectors (*see* Compl. ¶¶ 29, 46, 70(b));

- Failing to disclose to consumers that by not making timely payments on their credit cards, consumers' creditworthiness would likely be adversely affected (*see* Compl. ¶¶ 30, 46, 70(c)).[1]

---

[1] The truth of these allegations is confirmed by the substantial evidence that the FTC presented to the Court in support of its motion for a TRO, which was also served on Defendants. (*See* Doc. Nos. 6-7.)

6

These misrepresentations and omissions were likely to, and did in fact, mislead reasonable consumers. As alleged in the Complaint and supported by undisputed evidence in the record, consumers paid thousands of dollars to enroll in the debt relief scheme because of the Entity Defendants' deception. (*See* Compl. ¶¶ 31, 33, 45; Doc. No. 16 at 3 & n. 5.) Contrary to their promises, the Entity Defendants did not negotiate with creditors or eliminate or substantially reduce consumers' credit card debt—in fact, many consumers ended up further in debt with higher credit card balances, lower credit scores, and in some cases, subject to lawsuits by their creditors for unpaid credit card bills. (*See* Compl. ¶¶ 36, 41, 46-50.) The Entity Defendants are therefore liable for violating Section 5 of the FTC Act, and the Court should enter a default judgment against them on Counts I and II of the Complaint.

### B. The FTC's Well-Pleaded Allegations Establish that the Entity Defendants Violated the Telemarketing Sales Rule

The Telemarketing Sales Rule prohibits abusive and deceptive acts or practices in telemarketing. Specifically, the TSR prohibits sellers and telemarketers from "[m]isrepresenting, directly or by implication . . . [a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are subject of a sales offer." 16 C.F.R. § 310.3(a)(2)(iii). The TSR also prohibits sellers and telemarketers from "[m]isrepresenting, directly or by implication . . . [a] seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity." *Id.* § 310.3(a)(2)(vii). The TSR also contains specific provisions relating to the sale of debt relief services. Among other things, it is a violation of the TSR for a seller or telemarketer to misrepresent "[a]ny material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using such service; the amount of time necessary to achieve the represented results; . . . [and] the effect of the service on a customer's

7

creditworthiness." *Id.* § 310.3(a)(2)(x). It also is a violation of the TSR for a seller or telemarketer to fail to make certain disclosures to consumers regarding debt relief services, such as the fact that the customer's failure to make timely payments to creditors "will likely adversely affect the customer's creditworthiness, may result in the customer being subject to collections or sued by creditors or debt collectors, and may increase the amount of money the customer owes due to the accrual of fees and interest." *Id.* § 310.3(a)(1)(viii)(C). The TSR also prohibits sellers or telemarketers from requesting or receiving payment of any fee for any debt relief service until and unless the seller or telemarketer has renegotiated, settled, reduced, or altered the terms of at least one of the customer's debts. *Id.* § 310.4(a)(5)(i). "Identical principles of deception from Section 5 of the FTC Act apply to the TSR, and a violation of the TSR amounts to both a deceptive act or practice and a violation of the FTC Act." *E.M.A. Nationwide*, 767 F.3d at 633 (quoting *FTC v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1273 (M.D. Fla. 2012)).

The same allegations that form the bases for Counts I and II of the Complaint also establish that the Entity Defendants are liable for the violations of the TSR asserted in Counts III-VI of the Complaint. Counts III and IV of the Complaint allege that Defendants violated 16 C.F.R. §§ 310.3(a)(2)(x) and 310.3(a)(2)(vii) by making the same deceptive representations that form the basis of Count I, specifically, that: (1) Defendants will eliminate or substantially reduce consumers' credit card debts after 12 to 18 months; (2) the upfront fee that Defendants charge to consumers' credit cards is part of the overall debt that Defendants will eliminate; (3) consumers' credit scores will improve or return to normal after 12 to 18 months; and (4) Defendants are affiliated with banks, credit card associations, or credit reporting agencies. (Compl. ¶¶ 84-87.) Count V alleges that Defendants violated 16 C.F.R. § 310.3(a)(1)(viii)(C) by engaging in the same conduct that forms the basis of Count II, specifically, that Defendants failed to disclose or

disclose adequately to consumers that by failing to make timely payments on their credit cards: (1) the amount of money that consumers owe on their credit cards may increase due to accrual of fees and interest; (2) consumers may be subject to collections or sued by creditors or debt collectors; and (3) consumers' creditworthiness will likely be adversely affected. (Compl. ¶¶ 88-89.) Finally, the allegations of the Complaint establish that the Entity Defendants required and received advance payments for debt relief services ranging from several thousand dollars up to $18,000 before any services were provided. (Compl. ¶¶ 3, 27.) As alleged in Count VI, this conduct violates 16 C.F.R. § 310.4(a)(5)(i). (Compl. ¶¶ 90-91.)

Because the well-pleaded allegations of the Complaint establish that the Entity Defendants violated the TSR, the Court should enter a default judgment against them on Counts III through VI of the Complaint.

### C. The Entity Defendants Are a Common Enterprise and Jointly and Severally Liable for the Law Violations

"[A] corporate entity can be held liable for the conduct of other entities 'where the structure, organization, and pattern of a business venture reveal a common enterprise or a maze of integrated business entities.'" *FTC v. Lanier Law, LLC*, 715 F. App'x 970, 979 (11th Cir. 2017) (quoting *Wash. Data Res.*, 856 F. Supp. 2d at 1271). "There is not one universal or mandatory 'factor test' to determine whether a common enterprise exists; instead, 'the pattern and frame-work of the whole enterprise must be taken into consideration.'" *FTC v. HES Merchant Servs. Co.*, Case No. 6:12-cv-1618-Orl-22KRS, 2014 U.S. Dist. LEXIS 171292, at *16 (quoting *Del. Watch Co. v. FTC*, 332 F.2d 745, 746 (2d Cir. 1964)). In adopting the common enterprise theory of liability, the Sixth Circuit noted that courts generally find that a common enterprise exists "if, for example, businesses (1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising

9

and marketing." *E.M.A. Nationwide*, 767 F.3d at 636-37 (quoting *Wash. Data Res.*, 856 F. Supp. 2d at 1271).

Here, the allegations of the Complaint and the record evidence establish that the Entity Defendants acted as a common enterprise. Each of the Entity Defendants played a role in the debt relief scheme that was operated and controlled by the three Individual Defendants through a network of interrelated companies with overlapping ownership, officers, managers, business functions, employees, office locations, and commingled funds. (*See* Compl. ¶¶ 10-21, 51-57.) ACRO Services, American Consumer Rights Organization, Reliance Solutions, Thacker & Associates, and Consumer Protection Resources each advertised, marketed, or sold the purported debt relief services to consumers, using substantially similar marketing materials such as calling scripts, "welcome packets," and contracts. (*See id.* ¶¶ 10-11, 15-17, 32-41; Doc. Nos. 7-1, 7-3 to 7-16 (consumer declarations).) Music City Ventures, First Call Processing, and Nashville Tennessee Ventures each processed consumers' credit card payments through merchant accounts and used those funds to pay expenses related to the debt relief scheme and transfer funds to other bank accounts owned or controlled by the various Defendants. (*See* Compl. ¶¶ 12-14, 55-59; Doc. No. 63-1 (Thompson Decl.) ¶ 1; Doc. No. 7-18 (Agarwal Decl.) ¶¶ 12-15; Doc. No. 7-19 (Liggins Decl.) ¶¶ 56, 59 & Atts. VVVV, SSSS.) The Entity Defendants shared ownership and control by the Individual Defendants: Sean Austin was the sole owner of ACRO Services, a member of Reliance Services, and an account holder for Consumer Protection Resources; John Preston Thompson and John Steven Huffman were co-owners of Music City Ventures, Nashville Tennessee Ventures, First Call Processing, and Thacker & Associates.[2] (*See* Compl. ¶¶ 18-21,

---

[2] Because American Consumer Rights Organization was formed as a nonprofit corporation, it does not have any "owners." One of the officers of the organization, Christine ("Chrissy") Law, applied for Post Office Box 1070 in Locust Grove, Georgia, on behalf of "Tristar/American

10

52; Doc. No. 7-19 (Liggins Decl.) ¶¶ 8-18.) Austin and Thompson were also responsible for registering web domains for the Entity Defendants. (*See* Compl. ¶¶ 18, 53; Doc. No. 7-19 (Liggins Decl.) ¶¶ 35-45.) The Entity Defendants employed many of the same employees and operated through shared addresses, phone numbers, and business locations: ACRO Services, Thacker & Associates, First Call Processing, Music City Ventures, and Nashville Tennessee Ventures all operated out of a building at 503 Ligon Drive in Nashville, TN; ACRO Services, American Consumer Rights Organization, and Consumer Protection Resources all used an address at 4636 Lebanon Pike, Unit 348, Hermitage, TN; and ACRO Services, First Call Processing, and Reliance Solutions all listed their primary address as 530-B Harkle Rd, Ste 100, Santa Fe, NM. (*See* Compl. ¶¶ 10-21, 54; Doc. No. 7-19 (Liggins Decl.) ¶¶ 8-9, 11-17, 21, 23, 25, 26, 34, 46-48, 68-69, 75.) Bank records show that funds were commingled amongst the Entity Defendants and other accounts controlled by the Individual Defendants and used to share proceeds and pay expenses relating to the debt relief scheme. (*See* Compl. ¶¶ 12-14, 18-21, 40, 55-56; Doc. No. 7-18 (Agarwal Decl.) ¶¶ 11-15; Ex. B (Suppl. Agarwal Decl.) ¶ 9 (showing payments from Music City Ventures and ACRO Services to Tristar Consumer Law, another name for American Consumer Rights Organization); Doc. No. 7-19 (Liggins Decl.) ¶¶ 27, 75.)

---

Consumer Rights Organization"—an address that was used by many of the Entity Defendants on communications with consumers regarding the debt relief program. (*See* Doc. No. 7-19 (Liggins Decl.) ¶ 10 & Att. N; Doc. No. 88-1 (Suppl. Liggins Decl.) ¶ 8 & Att. G; Doc. No. 7-3 (Finck Decl.), Att. A at 5; Doc. No. 7-4 (Grego Decl.), Att. A at 5.) Christine Law and William Philbin, another officer of American Consumer Rights Organization, also received payments from the Individual Defendants and Entity Defendants for services relating to the debt relief scheme. (*See* Ex. B (Suppl. Agarwal Decl.) ¶¶ 9-10.)

11

Because the Entity Defendants operated as a common enterprise to deceive consumers, each of the Entity Defendants should be held jointly and severally liable for the injury caused by the debt relief scheme.[3]

## IV. THE COURT SHOULD ENTER THE FTC'S PROPOSED ORDER

The FTC filed this action seeking permanent injunctive relief pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and monetary relief pursuant to Section 19 of the FTC Act, 15 U.S.C. § 57b. The Individual Defendants stipulated to final orders that permanently enjoin them from selling debt relief services or participating in telemarketing, prohibit them from making unsubstantiated claims or misrepresentations concerning any facts material to consumers' purchase of goods or services, and bar them from engaging in certain conduct relating to merchant accounts used in payment processing. (*See* Doc. Nos. 82-84 at §§ I-V.) The Individual Defendants also stipulated to a monetary judgment of $17,486,080.85, for which they are jointly and severally liable. (*See* Doc. Nos. 82-84 at § VI.) The FTC now requests that the Court enter its Proposed Order, which contains injunctive provisions that mirror those agreed to by the Individual Defendants, a monetary judgment for the consumer harm caused by the Entity Defendants, provisions directing the receiver to liquidate the assets in the receivership and wind up the receivership, and standard provisions directed at ensuring compliance with the Proposed Order.

---

[3] While the well-plead allegations in the Complaint demonstrate that the Entity Defendants acted as a common enterprise, additional evidence that they acted as a common enterprise is discussed in the FTC's memorandum in support of its motion for a TRO, which was served on Defendants and which the FTC hereby incorporates by reference. (*See* Doc. No. 16 at 12-20, 27-29.)

12

### A. The FTC Seeks Appropriate Injunctive Relief

This Court has the authority to grant permanent injunctive relief to prevent and remedy violations of the laws enforced by the FTC. *See* 15 U.S.C. § 53(b) ("[I]n proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction."). Injunctive relief is appropriate where there is a risk that harm will recur. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("[T]he court's power to grant injunctive relief survives discontinuance of the illegal conduct. . . . The purpose of an injunction is to prevent future violations."). Although the Entity Defendants are no longer engaged in the telemarketing scheme and are currently under the control of the receiver, the FTC requests injunctive relief against them to bind not just "the parties," but also "the parties' officers, agents, servants, employees, and attorneys[] and [] other persons who are in active concert or participation with [them]." Fed. R. Civ. P. 65(d). Given the severity of the deception and the breadth of the telemarketing scheme, it is likely that many of the people who worked for the Entity Defendants to perpetrate the debt relief scheme will attempt to engage in similar acts in the future. (*See* Compl. ¶¶ 18-21, 58-62; Doc. No. 7-19 (Liggins Decl.) ¶ 75.) Ordering broad injunctive relief will help ensure that consumers are protected from future deceptive acts or practices.

In addition to enjoining the specific violations alleged in the Complaint, "[c]ourts also have discretion to include 'fencing-in' provisions that extend beyond the specific violations at issue to prevent Defendants from engaging in similar deceptive practices in the future." *FTC v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1230, 1335 (M.D. Fla. 2010) (citing *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 395 (1965)); *accord FTC v. John Beck Amazing Profits, LLC*, 888 F. Supp. 2d 1006, 1011-12 (C.D. Cal. 2012) (discussing fencing-in provisions and noting that the FTC Act "authorizes imposition of comprehensive prophylactic injunctive relief"). The scope of

13

an injunction will be upheld as long as it bears a "reasonable relation to the unlawful practices found to exist." *FTC v. Colgate-Palmolive*, 380 U.S. at 394-95. The FTC's Proposed Order contains fencing-in provisions that are appropriately tailored to prevent future violations of law similar to those alleged in the Complaint.

Specifically, Sections I and II of the Proposed Order ban the Entity Defendants from participating in telemarketing and the sale of debt relief products or services. Sections III and IV of the Proposed Order prohibit the Entity Defendants (and their officers, agents, employees, attorneys, and all other persons in active concert or participation with them) from making or assisting others in making material misrepresentations and unsubstantiated claims of any product or service offered to consumers. Section V of the Proposed Order prohibits the Entity Defendants (and their officers, agents, employees, attorneys, and all other person in active concert or participation with them) from credit card laundering, making false or misleading statements to obtain payment processing services, or engaging in tactics to avoid fraud and risk monitoring programs established by financial institutions in connection with merchant accounts. These proposed bans and prohibitions are appropriate and directly related to the conduct for which the Entity Defendants are being held liable in this case. The Entity Defendants used deceptive telemarketing practices to market and sell a fraudulent debt relief program that did nothing to actually help consumers, and they circumvented payment processing rules designed to prevent fraud on merchant accounts. (*See* Compl. ¶¶ 23-50, 57-61.) In numerous cases involving similar conduct, courts have enjoined the defendants from engaging in telemarketing, from selling certain types of products, and from making false, misleading, or unsubstantiated claims to consumers. *See, e.g.*, *E.M.A. Nationwide*, 2013 U.S. Dist. LEXIS 120914, at *27 (enjoining defendants from working in debt relief and mortgage assistance industries); *FTC v.*

14

*Grant Connect, LLC*, 763 F.3d 1094, 1105 (9th Cir. 2014) (affirming permanent injunction barring defendant from engaging in certain types of marketing, using testimonials, and making electronic funds transfers).

The injunctive provisions in Sections I-V of the Proposed Order mirror the injunctive provisions in the Individual Stipulated Orders. (*See* Doc. Nos. 82-84.) Given that the Individual Defendants controlled and managed the Entity Defendants as a common enterprise, it is appropriate to treat the Entity Defendants equally by ordering the same injunctive relief against all the Defendants.

### B. The FTC Seeks Appropriate Monetary Relief

Where the Defendants have violated an FTC rule regarding deceptive or unfair acts or practices (such as the Telemarketing Sales Rule), the Court has authority under Section 19 of the FTC Act to "grant such relief as the court finds necessary to redress injury to consumers or other persons . . . resulting from the rule violation," including "rescission or reformation of contracts, the refund of money or return of property, [or] the payment of damages." 15 U.S.C. § 57b(b). Here, the Entity Defendants' violations of the TSR caused consumers to be charged thousands of dollars each for debt relief services that provided them no value, and in many cases left them worse off than if they had never signed up for the program. At a minimum, therefore, an appropriate measure of the consumer injury in this case is the total amount of money that the Defendants charged to consumers' credit cards.[4] The FTC is submitting a supplemental declaration from its forensic accountant, Roshni Agarwal, who analyzed records produced by the Defendants' payment processor, BlueSnap, Inc. *See* First Suppl. Decl. of Roshni Agarwal

---

[4] This measure is conservative because it does not include amounts that consumers paid to the Defendants by check, nor does it account for additional damages that consumers may have suffered, such as attorneys' fees incurred when they were sued by their credit card companies.

15

attached hereto as Exhibit B. Her analysis of these records shows that since November 7, 2019

(the earliest date for which the FTC can recover under the applicable 3-year statute of

limitations, *see* 15 U.S.C. § 57b(d)), consumers were charged a net total of $30,226,160.44

through the three merchant accounts used by the Entity Defendants. (Ex. B (Suppl. Agarwal

Decl.) ¶ 8.) Accordingly, the FTC seeks to impose a total monetary judgment of $30,226,160.44

against the Entity Defendants.[5]

### C. The FTC's Proposed Order Provides for the Winding Up of the Receivership

The Proposed Order provides for the receiver's appointment under the Stipulated

Preliminary Injunction to be continued until the assets in the receivership can be liquidated and

transferred to the Commission, at which point the receiver would submit a final report and be

discharged (see Sections VI(I), IX). Cooperation with the receivership is necessary as the

receiver was appointed "to safeguard the disputed assets, administer the property as suitable, and

to assist the district court in achieving a final, equitable distribution of the assets if necessary."

*Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). Many courts have

required completion of the receivership in similar FTC cases. *See, e.g.*, *FTC v. Rando*, No. 3:22-

cv-487-TJC-MCR (M.D. Fla. 2023); *FTC v. First Choice Horizon*, No. 6:19-cv-01028-PGB-

LRH (M.D. Fla. 2020); *FTC v. United Benefits, LLC*, Case No. 3:10-cv-733 (M.D. Tenn. Aug. 3,

---

[5] The Proposed Order provides for two separate monetary judgments: (1) a judgment of $17,486,080.85, joint and several with the Individual Defendants; and (2) a judgment of $12,740,079.59 that is not joint and several with the Individual Defendants, combining for a total monetary judgment against the Entity Defendants of $30,226,160.44. (*See* Ex. B (Suppl. Agarwal Decl.) ¶ 8.) The separate judgments are necessary because the Individual Stipulated Orders provide that the Individual Defendants are liable only for $17,486,080.85 (a figure that was agreed to in settlement discussions before additional data was produced by BlueSnap showing the total charges to consumers).

16

2010); *FTC v. National Testing Services, LLC et. al*, Case No. 3:05–0613, 2005 WL 2000634 (M.D. Tenn. 2005).

### D. The FTC's Proposed Order Includes Standard Reporting and Monitoring Requirements

The Proposed Order also includes standard provisions requiring the Entity Defendants to destroy customer information, cooperate with the receiver, submit certain reports and acknowledgments to the Commission, maintain certain records, and submit to compliance monitoring (see Sections VII, VIII, X-XIII). Like the other forms of injunctive relief Plaintiff has requested, this relief is well within the Court's power to impose and is in fact routinely ordered in FTC cases to facilitate compliance with the other permanent injunctive provisions. *See, e.g.*, *FTC v. 6253547 Canada, Inc.*, No. 1:09-cv-1211, Doc. No. 42 (N.D. Ohio Mar. 30, 2010) (including compliance monitoring, compliance reporting, recordkeeping, and order distribution provisions); *FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1276 (S.D. Fla. 1999) (holding that recordkeeping and monitoring provisions were "appropriate to permit the Commission to police the defendants' compliance with the order"); *FTC v. Renaissance Fine Arts, Ltd.*, No. 1:94CV0157, 1995 WL 523619, 1995 U.S. Dist. LEXIS 21041 (N.D. Ohio Aug. 10, 1995) (including recordkeeping, monitoring, and notification provisions). The provisions requested here mirror the provisions included in the Individual Stipulated Orders. (*See* Doc. Nos. 82-84 at §§ VII, IX-XIII.)

## V. CONCLUSION

The FTC respectfully requests that the Court enter the default judgment and Proposed Order against ACRO Services LLC, American Consumer Rights Organization, First Call Processing LLC, Music City Ventures, Inc., Nashville Tennessee Ventures, Inc., Reliance Solutions, LLC, Thacker & Associates Int'l LLC, and Consumer Protection Resources, LLC.

Respectfully submitted,

Dated June 16, 2023

*/s/ Margaret Burgess*
MARGARET BURGESS
ALAN BAKOWSKI
NATALYA RICE
Federal Trade Commission
233 Peachtree Street, NE, Ste. 1000
Atlanta, GA 30303
Telephone: 202-250-4693 (Burgess)
Telephone: 404-656-1363 (Bakowski)
Telephone: 202-445-8587 (Rice)
Email: mburgess1@ftc.gov,
abakowski@ftc.gov, nrice@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 16, 2023, a true and correct copy of the foregoing MOTION FOR DEFAULT JUDGMENT AGAINST THE ENTITY DEFENDANTS was filed electronically with the United States District Court for the Middle District of Tennessee using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system, as well as by email to Sean Austin at saaustin1997@comcast.net, by email to John Steven Huffman at stevemitm@gmail.com, and by email to John Preston Thompson at jpthompson615@comcast.net. Additionally, a true and correct copy of the foregoing was sent by U.S. mail addressed to the following:

ACRO Services LLC
4636 Lebanon Pike #348
Hermitage, TN 37076

ACRO Services LLC
530-B Harkle Road, Ste 100
Santa Fe, NM 87505

ACRO Services LLC
c/o Registered Agents Inc.
2201 Menaul Blvd NE, Ste A
Albuquerque, NM 87107

American Consumer Rights Organization
4636 Lebanon Pike #348
Hermitage, TN 37076

First Call Processing LLC
530-B Harkle Rd, Ste 100
Santa Fe, NM 87505

First Call Processing LLC
c/o Registered Agents Inc.
2201 Menaul Blvd NE, Ste A
Albuquerque, NM 87107

Music City Ventures, Inc.
503 Ligon Dr., Ste A

Nashville, TN 37204

Nashville Tennessee Ventures, Inc.
503 Ligon Dr., Ste A
Nashville, TN 37204

Reliance Solutions, LLC
530-B Harkle Rd, Ste 100
Santa Fe, NM 87505

Reliance Solutions, LLC
c/o Registered Agents Inc.
2201 Menaul Blvd NE, Ste A
Albuquerque, NM 87107

Thacker & Associates Int'l LLC
503 Ligon Dr., Ste A
Nashville, TN 37204

Thacker & Associates Int'l LLC
2700 Las Vegas Blvd S Unit 3108
Las Vegas, NV 89109

Consumer Protection Resources, LLC
1309 Coffeen Avenue, Suite 3076
Sheridan, Wyoming 82801

Consumer Protection Resources, LLC
c/o Cloud Peak Law, LLC
1095 Sugar View Dr, Ste 500
Sheridan, WY 82801

*/s/ Margaret Burgess*
MARGARET BURGESS