# EXHIBIT A

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | **Case No. 3:22-cv-00895-EJR-JSF** |
| Plaintiff, | |
| v. | **[Proposed]**<br>**DEFAULT FINAL ORDER FOR** |
| ACRO SERVICES LLC, *et al.*, | **PERMANENT INJUNCTION AND** |
| Defendants. | **MONETARY JUDGMENT AS TO** |
| | **DEFENDANTS ACRO SERVICES LLC,** |
| | **AMERICAN CONSUMER RIGHTS** |
| | **ORGANIZATION, FIRST CALL** |
| | **PROCESSING LLC, MUSIC CITY** |
| | **VENTURES, INC., NASHVILLE** |
| | **TENNESSEE VENTURES, INC.,** |
| | **RELIANCE SOLUTIONS, LLC,** |
| | **THACKER & ASSOCIATES INT'L LLC,** |
| | **AND CONSUMER PROTECTION** |
| | **RESOURCES, LLC** |

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction, Monetary Relief, and Other Relief ("Complaint") pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and Section 6(b) of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6105(b). On November 21, 2022, on motion by the FTC, the Court entered an *ex parte* temporary restraining order ("TRO") with asset freeze and other equitable relief against Defendants, which was extended by the Court on November 30, 2022. On December 13, 2022, the Court entered a Stipulated Preliminary Injunction. On June 16, 2023, the Commission filed a Motion for Default Judgment Against Defendants ACRO Services LLC, American Consumer Rights Organization, First Call Processing LLC, Music City Ventures, Inc., Nashville Tennessee Ventures, Inc., Reliance Solutions, LLC, Thacker &

Associates Int'l LLC, and Consumer Protection Resources LLC (together, the "Entity Defendants"). Having considered that motion and the entire record in this matter, the Commission's request for a permanent injunction against the Entity Defendants is hereby **GRANTED**.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1. This Court has jurisdiction over the subject matter of this case and personal jurisdiction over the Entity Defendants.

2. Venue is proper as to all parties in this district.

3. The Complaint states a claim upon which relief may be granted pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b).

4. The Entity Defendants' activities as alleged in the Complaint are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

5. The FTC properly served each of the Entity Defendants with the Complaint and summons. *See* ECF Nos. 30, 34-39, 59.

6. The Entity Defendants failed to answer or otherwise respond to the Complaint.

7. On May 1, 2023, the Clerk of Court entered the default of Music City Ventures, Inc., Nashville Tennessee Ventures, Inc., Consumer Protection Resources, LLC, and Thacker & Associates Int'l LLC. *See* ECF No. 85.

8. On June 6, 2023, the Clerk of Court entered the default of ACRO Services LLC, American Consumer Rights Organization, First Call Processing LLC, and Reliance Solutions, LLC. *See* ECF No. 92.

9.      The FTC is entitled to default judgment as to the Entity Defendants pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.

10.     The allegations of the Complaint are taken as true against the Entity Defendants.

11.     The allegations of the Complaint and competent evidence in the record establish that the Entity Defendants violated Section 5 of the FTC Act, 15 U.S.C. § 45, and the Telemarketing Sales Rule, 16 C.F.R. Part 310 ("TSR"), by engaging in deceptive or abusive acts and practices in connection with the advertising, marketing, promotion, offering for sale, or sale of debt relief services to consumers.

12.     As alleged in Count I of the Complaint, the Entity Defendants made numerous false or misleading statements to consumers, including: (a) that the Entity Defendants will eliminate or substantially reduce consumers' credit card debts within 12 to 18 months; (b) that the upfront fees charged to consumers' credit cards will be part of the debt eliminated by the Entity Defendants, and therefore consumers will not actually have to pay this fee; (c) that consumers' credit scores will improve or return to normal after 12 to 18 months; and (d) that the Entity Defendants are affiliated with banks, credit card associations, or credit reporting agencies.

13.     As alleged in Count II of the Complaint, the Entity Defendants failed to disclose material terms and conditions of the debt relief services they marketed to consumers, including that by failing to make timely payments on their credit cards: (a) the amount of money that consumers owe on their credit cards may increase due to the accrual of fees and interest; (b) consumers may be subject to collections or sued by creditors or debt collectors; and (c) consumers' creditworthiness will likely be adversely affected.

14.     The allegations in the Complaint establish that the Entity Defendants were engaged in telemarketing, as defined by the TSR, 16 C.F.R. § 310.2(gg).

3

15.    As alleged in Count III of the Complaint, the Entity Defendants violated the TSR by making numerous misrepresentations in connection with the telemarketing of debt relief services, including that: (a) the Entity Defendants will eliminate or substantially reduce consumers' credit card debts after 12 to 18 months; (b) the upfront fee that the Entity Defendants charge to consumers' credit cards is part of the overall debt that will be eliminated by the Entity Defendants, and therefore consumers will not actually have to pay this fee; (c) that consumers' credit scores will improve or return to normal after 12 to 18 months.  *See* 16 C.F.R. § 310.3(a)(2)(x).

16.    As alleged in Count IV of the Complaint, the Entity Defendants violated the TSR by misrepresenting their affiliation with, or endorsement or sponsorship by, banks, credit card associations, or credit reporting agencies in connection with the telemarketing of debt relief services.  *See* 16 C.F.R. § 310.3(a)(2)(vii).

17.    As alleged in Count V of the Complaint, the Entity Defendants violated the TSR by failing to disclose, in a clear and conspicuous manner, that their debt relief services—which directed consumers to stop making timely payments to their credit card companies—will likely adversely affect the consumer's creditworthiness, may result in the consumer being subject to collections or sued by creditors or debt collectors, and may increase the amount of money the consumer owes due to the accrual of fees and interest.  *See* 16 C.F.R. § 310.3(a)(1)(viii)(C).

18.    As alleged in Count VI of the Complaint, the Entity Defendants violated the TSR by requesting or receiving payment of fees or consideration for debt relief services before: (a) the Entity Defendants renegotiate, settle, reduce, or otherwise alter the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual

4

agreement executed by the consumer; and (b) the consumer made at least one payment pursuant to that agreement. *See* 16 C.F.R. § 310.4(a)(5)(i).

19.     The allegations of the Complaint and competent evidence in the record establish that the Entity Defendants operated as a common enterprise while engaging in the deceptive acts and practices alleged in the Complaint.

20.     Competent evidence in the record establishes that the deceptive acts and practices of the Entity Defendants resulted in consumers suffering injury in the amount of at least $30,226,160.44 during the period from November 7, 2019 through the date of this Order.

21.     The FTC is therefore entitled to monetary relief against the Entity Defendants in the amount of $30,226,160.44, for which each of the Entity Defendants is jointly and severally liable.

22.     The risk of future violations by the Entity Defendants justifies the issuance of permanent injunctive relief.

23.     This Order is in addition to, and not in lieu of, any other civil or criminal penalties that may be provided by law.

24.     Entry of this Order is in the public interest.

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A.     "**Acquirer**" means a business organization, Financial Institution, or an agent of a business organization or Financial Institution that has authority from an organization that operates or licenses a credit card system (e.g., VISA, Mastercard, American Express, and Discover) to authorize Merchants to accept, transmit, or process payment by credit card through the credit card system for money, Products or Services, or anything else of value.

5

B. "**Asset**" means any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held.

C. "**Assisting Others**" includes:

1. performing customer service functions, including receiving or responding to consumer complaints;

2. formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

3. formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

4. providing names of, or assisting in the generation of, potential customers; or

5. performing marketing, billing, or payment services of any kind.

D. "**Clearly and Conspicuously**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1. In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be

6

presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2. A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3. An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4. In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5. The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6. The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8. When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

7

E.    "**Entity Defendants**" means ACRO Services LLC, also doing business as Capital Compliance Solutions; American Consumer Rights Organization, also doing business as Tristar Consumer Law Organization; First Call Processing LLC; Music City Ventures, Inc., also doing business as Tri Star Consumer Group; Nashville Tennessee Ventures, Inc., also doing business as Integrity Resolution Group; Reliance Solutions, LLC, also doing business as Reliance Services, LLC; Thacker & Associates Int'l LLC; Consumer Protection Resources, LLC; and their successors and assigns.

F.    "**Credit Card Laundering**" means: (a) presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; (b) employing, soliciting, or otherwise causing or allowing a Merchant, or an employee, representative, or agent of a Merchant, to present or deposit into the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; or (c) obtaining access to the credit card system through the use of a business relationship or an affiliation with a Merchant, when such access is not authorized by the Merchant Account agreement or the applicable credit card system.

G.    "**Credit Card Sales Draft**" means any record or evidence of a credit card transaction.

H.    "**Debt Relief Product or Service**" means:

1.    With respect to any mortgage, loan, debt, or obligation between a Person and one or more secured or unsecured creditors or debt collectors, any Product or Service represented, expressly or by implication, to:

8

a. stop, prevent, or postpone any mortgage or deed of foreclosure sale for a Person's dwelling, any other sale of collateral, any repossession of a Person's dwelling or other collateral, or otherwise save a Person's dwelling or other collateral from foreclosure or repossession;

b. negotiate, obtain, or arrange a modification, or renegotiate, settle, or in any way alter any terms of the mortgage, loan, debt, or obligation, including a reduction in the amount of interest, principal balance, monthly payments, or fees owed by a Person to a secured or unsecured creditor or debt collector;

c. obtain any forbearance or modification in the timing of payments from any secured or unsecured holder or servicer of any mortgage, loan, debt, or obligation;

d. negotiate, obtain, or arrange any extension of the period of time within which a Person may (i) cure his or her default on the mortgage, loan, debt, or obligation, (ii) reinstate his or her mortgage, loan, debt, or obligation, (iii) redeem a dwelling or other collateral, or (iv) exercise any right to reinstate the mortgage, loan, debt, or obligation or redeem a dwelling or other collateral;

e. obtain any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling or other collateral; or

9

f.       negotiate, obtain, or arrange (i) a short sale of a dwelling or other collateral, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a mortgage, loan, debt, or obligation other than a sale to a third party that is not the secured or unsecured loan holder.

The foregoing shall include any manner of claimed assistance, including auditing or examining a Person's application for the mortgage, loan, debt, or obligation.

2.      With respect to any loan, debt, or obligation between a Person and one or more unsecured creditors or debt collectors, any Product or Service represented, expressly or by implication, to:

a.      repay one or more unsecured loans, debts, or obligations; or

b.      combine unsecured loans, debts, or obligations into one or more new loans, debts, or obligations.

3.      Any Product or Service, in return for payment of money or other valuable consideration, for the express or implied purpose of: (1) improving any consumer's credit report, credit record, credit history, credit profile, credit score, or credit rating; or (2) providing any advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve a consumer's credit report, credit record, credit history, credit profile, credit score, or credit rating.

10

I.    "**Defendants**" means Sean Austin, John Steven Huffman also known as Steve Huffman, John Preston Thompson also known as Preston Thompson, and the Entity Defendants, individually, collectively, or in any combination.

J.    "**Financial Institution**" means any institution the business of which is engaging in financial activities as described in section 4(k) of the Bank Holding Company Act of 1956 (12 U.S.C. § 1843(k)).  An institution that is significantly engaged in financial activities is a Financial Institution.

K.    "**Merchant**" means any Person engaged in the sale or marketing of any Products or Services or a charitable contribution, including any Person who applies for Payment Processing services.

L.    "**Merchant Account**" means any account with an Acquirer or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind.

M.    "**Payment Processing**" means transmitting sales transaction data on behalf of a Merchant or providing a Person, directly or indirectly, with the means used to charge or debit accounts through the use of any payment method or mechanism, including, but not limited to, credit cards, debit cards, prepaid cards, stored value cards, ACH debits, remotely created payment orders, and remotely created checks.  Whether accomplished through the use of software or otherwise, Payment Processing includes, among other things: (a) reviewing and approving Merchant applications for Payment Processing services; (b) transmitting sales transaction data or providing the means to transmit sales transaction data from Merchants to Acquirers or other Financial Institutions; (c) clearing, settling, or distributing proceeds of sales

11

transactions from Acquirers or Financial Institutions to Merchants; or (d) processing chargebacks or returned remotely created payments orders or ACH debits.

N.    "**Person**" means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

O.    "**Product or Service**" means any good or service, including any plan or program.

P.    "**Receiver**" means S. Gregory Hays and any deputy receiver appointed by him.

Q.    "**Receivership Assets**" means the Assets identified in Section VI.C of this Order and all Assets of the Entity Defendants, including: (a) any Assets of the Entity Defendants currently in the possession of the Receiver; (b) all the funds, property, premises, accounts, documents, mail, and all other Assets of, or in the possession or under the control of, the Entity Defendants, wherever situated, the income and profits therefrom, all sums of money now or hereafter due or owing to the Entity Defendants, and any other Assets or property belonging or owed to the Entity Defendants; (c) any Assets of the Entity Defendants held in Asset protection trusts; (d) any reserve funds or other accounts associated with any payments processed on behalf of any Entity Defendant, including such reserve funds held by a payment processor, credit card processor, or bank; and (e) any proceeds from the sale of such Assets, except those Assets the sale of which the Receiver determines will not add appreciably to the value of the estate.

R.    "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of Products or Services by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule.

## ORDER

### I.    BAN ON DEBT RELIEF PRODUCTS OR SERVICES

IT IS ORDERED that Entity Defendants are permanently restrained and enjoined, whether acting directly or through an intermediary, from advertising, marketing, promoting,

12

offering for sale, or selling, or Assisting Others in the advertising, marketing, promoting, offering for sale, or selling, of any Debt Relief Product or Service.

## II. BAN ON TELEMARKETING

IT IS FURTHER ORDERED that Entity Defendants are permanently restrained and enjoined from participating in Telemarketing, whether directly or through an intermediary.

## III. PROHIBITION AGAINST MISREPRESENTATIONS AND OMISSIONS

IT IS ORDERED that Entity Defendants, Entity Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any Product or Service, are permanently restrained and enjoined from:

A.  Misrepresenting, or Assisting Others in misrepresenting, expressly or by implication:

1.  any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

2.  that any Person is affiliated with, endorsed or approved by, or otherwise connected to any other Person; government entity; public, non-profit, or other non-commercial program; or any other program;

3.  the nature, expertise, position, or job title of any Person who provides any Product or Service; or

4.  any other fact material to consumers concerning any Product or Service, such as: the total costs to purchase, receive, or use the Product or Service; any

13

material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

B.     Failing to disclose, or Assisting Others in failing to disclose, Clearly and Conspicuously, before a consumer consents to pay for a Product or Service offered:

1.     the total cost to purchase, receive, or use the Product or Service;

2.     any additional fees the consumer may incur as a result of paying for the Product or Service; or

3.     any material aspect of the performance, efficacy, nature, or characteristics of the Product or Service.

## IV.     PROHIBITION AGAINST UNSUBSTANTIATED CLAIMS

IT IS FURTHER ORDERED that Entity Defendants, Entity Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the promoting or offering for sale of any Product or Service, are permanently restrained and enjoined from making any representation or Assisting Others in making any representation, expressly or by implication, about the benefits, performance, or efficacy of any Product or Service, unless the representation is non-misleading, including that, at the time such representation is made, they possess and rely upon competent and reliable evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant fields, when considered in light of the entire body of relevant and reliable evidence, to substantiate that the representation is true.

## V.     PROHIBITIONS RELATED TO MERCHANT ACCOUNTS

IT IS FURTHER ORDERED that Entity Defendants, Entity Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of

14

them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any Product or Service are permanently restrained and enjoined from:

A.     Credit Card Laundering;

B.     Making, or Assisting Others in making, expressly or by implication, any false or misleading statement in order to obtain Payment Processing services; and

C.     Engaging in any tactics to avoid fraud and risk monitoring programs established by any Financial Institution, Acquirer, or the operators of any payment system, including tactics such as balancing or distributing sales transactions among multiple Merchant Accounts or merchant billing descriptors; splitting a single sales transaction into multiple smaller transactions; or using shell companies to apply for a Merchant Account.

## VI.     MONETARY JUDGMENTS

IT IS FURTHER ORDERED that:

A.     Judgment in the amount of $17,486,080.85 is entered in favor of the Commission against Entity Defendants, jointly and severally, as monetary relief.  This judgment is joint and several with the judgments against Defendants Sean Austin, John Preston Thompson, and John Steven Huffman entered separately on April 28, 2023.

B.     Judgment in the amount of $12,740,079.59 is entered in favor of the Commission against Entity Defendants, jointly and severally, as monetary relief.  This judgment is not joint and several with any other judgment in this matter to date.

C.     In partial satisfaction of the judgment specified in Subsection B. above, and to the extent not already done so:

1.     Capstar Bank, its parent corporation, subsidiaries, principals, and agents shall, within ten (10) days of receiving a copy of this Order by any means, turn over

15

all funds in the accounts listed below to the Receiver in accordance with instructions provided by the Receiver:

     a. Account No. XXXXXX2612, held in the name of Reliance Solutions, LLC.

2. Volunteer State Bank, its parent corporation, subsidiaries, principals, and agents shall, within ten (10) days of receiving a copy of this Order by any means, turn over all funds in the accounts listed below to the Receiver in accordance with instructions provided by the Receiver:

     a. Account No. XXXX0880, held in the name of ACRO Services LLC.

D.     Any entity or person, including Entity Defendants or any financial institution, holding Entity Defendants' assets must transfer those assets to the Commission or to the Receiver, in accordance with instructions provided by a representative of the Commission or the Receiver, within ten (10) days of receiving a copy of this Order by any means.

E.     The Receiver shall, as soon as practicable, liquidate all Receivership Assets; provided, however, that the Receiver is authorized to abandon any unliquidated asset that the Receiver determines is not economically viable or is otherwise not practical to liquidate. After payment to the Receiver of any expenses approved by the Court, all proceeds from the liquidation of the Receivership Assets shall be paid to the Commission.

F.     Entity Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Entity Defendants must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

16

G.    All money received by the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for consumer relief, such as redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after such redress is completed, the Commission may apply any remaining money for such related relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Entity Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

H.    The freeze against the assets of Entity Defendants pursuant to the Stipulated Preliminary Injunction entered by the Court on December 13, 2022 (Docket No. 49) (the "Preliminary Injunction") is modified to permit the payments/transfers identified in this Section. Once all of the Entity Defendants' frozen assets are transferred in accordance with this Section, the asset freeze will dissolve with respect to Entity Defendants.

## VII.    CUSTOMER INFORMATION

Entity Defendants, Entity Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.    failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.  If a representative of the Commission requests in writing any information related to redress, Entity Defendants must provide it, in the form prescribed by the Commission, within 14 days;

B.    disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information,

17

or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Entity Defendant obtained prior to entry of this Order; and

   C.      failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

   Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## VIII.   COOPERATION WITH RECEIVER

   IT IS FURTHER ORDERED that Entity Defendants must fully cooperate with and assist the Receiver and the Receiver's professionals in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint and the duties imposed on, or powers granted to, the Receiver by any current or future order of the Court. This cooperation and assistance shall include, but not be limited to, providing any information to the Receiver and the Receiver's professionals that is reasonably necessary to enable the Receiver to exercise his authority and discharge his responsibilities under the applicable orders of the Court.  Entity Defendants must provide truthful and complete information, evidence, and testimony.  Entity Defendants must cause their officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that the Receiver or the Receiver's professionals may reasonably request upon five (5) days written notice, or other reasonable notice, at such places and times as the Receiver may designate, without the service of a subpoena.

18

## IX. COMPLETION OF RECEIVERSHIP

IT IS FURTHER ORDERED that the appointment of the Receiver over the Entity Defendants pursuant to the Preliminary Injunction is hereby continued as modified by this Section.

A.      The Receiver is directed and authorized to accomplish the following within one hundred and eighty (180) days after entry of this Order, but any party or the Receiver may request that the Court extend the Receiver's term for good cause:

1.      Complete the process of taking custody, control, and possession of all Assets of the Entity Defendants, pursuant to Section IX of the Preliminary Injunction;

2.      Complete, as necessary, the liquidation of all Receivership Assets and all Assets transferred to the Receiver pursuant to the Stipulated Orders for Permanent Injunction and Monetary Judgments as to Defendants John Preston Thompson and John Steven Huffman (Doc. Nos. 83, 84), without further order of the Court;

3.      Prepare and submit a report describing the Receiver's activities pursuant to this Order, and a final application for compensation and expenses; and

4.      Transfer to the Commission the proceeds from the liquidation of all Assets held by the Receiver, less any compensation and expenses approved by the Court, pursuant to instructions from a representative of the Commission.

B.      Upon completion of the above tasks, the duties of the receivership shall terminate, and the Receiver shall be discharged.

## X. ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Entity Defendants each obtain acknowledgments of receipt of this Order:

A.      Each Entity Defendant, within 7 days of entry of this Order, must submit to the

19

Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, each Entity Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which Entity Defendants delivered a copy of this Order, such Entity Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XI.     COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Entity Defendants make timely submissions to the Commission:

A.      One year after entry of this Order, each Entity Defendant must submit a compliance report, sworn under penalty of perjury. Each Entity Defendant must: (1) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with that Defendant; (2) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (3) describe the activities of each business, including the Products and Services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant; (4) describe in detail whether and how that Defendant is

20

in compliance with each Section of this Order; and (5) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.      For 20 years after entry of this Order, each Entity Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following: (1) any designated point of contact; or (2) the structure of any Entity Defendant or any entity that Entity Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.      Each Entity Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Entity Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin: FTC v. ACRO Services LLC et al., Matter

21

No. X230005.

## XII. RECORDKEEPING

IT IS FURTHER ORDERED that Entity Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, each Entity Defendant must create and retain the following records:

A.     accounting records showing the revenues from all Products or Services sold;

B.     personnel records showing, for each person providing services, whether as an employee or otherwise, that person's name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.     records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.     all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission;

E.     a copy of each unique advertisement or other marketing material; and

F.     copies of contracts with suppliers, payment processors, and list brokers.

## XIII. COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Entity Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A.     Within 14 days of receipt of a written request from a representative of the Commission, each Entity Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by

22

Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with each Entity Defendant.  Entity Defendants must permit representatives of the Commission to interview any employee or other person affiliated with any Entity Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Entity Defendants or any individual or entity affiliated with Entity Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XIV.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.


**SO ORDERED, this _____ day of _____, 2023.**


_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

23