# EXHIBIT B

# FIRST SUPPLEMENTAL DECLARATION OF ROSHNI AGARWAL PURSUANT TO 28 U.S.C. § 1746

I, Roshni Agarwal, declare and state as follows:

1. The following facts are known to me personally and, if called as a witness, I could and would testify to the matters set forth below.

2. I am employed by the Federal Trade Commission ("FTC") as a Forensic Accountant. My work address is 600 Pennsylvania Ave., N.W., Washington, D.C. 20580. I have worked at the FTC since August 2016.

3. While at the FTC, I have worked as a Forensic Accountant in the Bureau of Consumer Protection ("BCP") where I work with both BCP trial attorneys and investigators. This work involves reviewing and analyzing financial records, including bank statements, money transfers, and transactional data.

4. Previously, I was assigned to assist in the investigation of Defendants' debt relief business by conducting forensic accounting of certain banking records. I signed a declaration summarizing my review of these records on November 3, 2022.

5. More recently, attorneys working on this case asked me to review transactional data produced by BlueSnap, Inc. ("BlueSnap"), a payment facilitator for Defendants' debt relief business. The data shows transactions between consumers and the debt relief business across three different merchant accounts. Using this data, I calculated the net revenue generated by Defendants' debt relief business starting on November 7, 2019.

6. In my capacity as a Forensic Accountant at the FTC, I reviewed and analyzed the transactional data from BlueSnap. Each row of the data represents a different consumer transaction, and each transaction is coded as a "Transaction Type" as follows: a sale, a refund, or a chargeback. Each sale is a positive dollar amount, and each chargeback and each refund is a negative dollar amount. Based on my review of the data, the sales are money that consumers paid to the debt relief business, and the chargebacks and refunds are money that was later returned to consumers. Net revenue is the sum of all sales minus the sum of all chargebacks and refunds.

7. To calculate the net revenue generated by Defendants' debt relief business since November 7, 2019, I first excluded all transactions that were dated before November 7, 2019. With the remaining transactions dated November 7, 2019 and later, I used a pivot table in Excel to sum up all sales, chargebacks, and refunds by each "Shopper ID" (i.e., the unique identifier for each consumer). Some Shopper IDs had negative-value totals, meaning that these consumers had engaged in a sale before November 7, 2019 and then received a chargeback or refund on or after November 7, 2019. Many other Shopper IDs had positive-value totals or totals equal to zero, meaning that these consumers had engaged in a sale on or after November 7, 2019—and then some of them had received a chargeback or refund, causing their totals to equal zero. To calculate net revenue, I

summed up all positive- and zero-value totals by Shopper ID, and I excluded all negative-value totals by Shopper ID.  By only including positive- and zero-value totals, I ensured that I excluded chargebacks and refunds associated with sales dated earlier than November 7, 2019.  Otherwise, if I had included the negative-value totals, I would have underestimated the net revenue by subtracting chargebacks and refunds that were actually associated with sales predating November 7, 2019.

8. Across the three merchant accounts, I calculated the net revenue from November 7, 2019 and onward as $30,226,160.44.  **Table 1** below shows the breakdown of net revenue by merchant account.

**Table 1: Net Revenue by Merchant Account**

| Merchant Account Number | Net Revenue |
|---|---|
| 1122444 | $2,937,129.74 |
| 1090909 | $26,090,861.61 |
| 1253610 | $1,198,169.09 |
| **TOTAL** | **$30,226,160.44** |

9. In addition, the attorneys working on this case asked me to review records for bank accounts in Defendants' names that I had previously reviewed when preparing my declaration signed on November 3, 2022.  This time, the attorneys asked me to look for payments between Defendants and Christine (also known as "Chrissy") Law, William (also known as "Billy") Philbin, Lawco Services, and Tri Star Consumer Law.  I identified multiple payments from Defendants to these two individuals and two entities, including the following summarized below.  These transactions do not represent all payments between Defendants and these two individuals and two entities; these are just selected examples.

   a. Music City Ventures, Inc., account ending in 7416 with First Volunteer State Bank of Tennessee:

      i. Wrote check for $15,147 to Lawco Services on March 25, 2020

      ii. Wrote check for $11,840 to Lawco Services on April 23, 2020

      iii. Wrote check for $4,117 to Lawco Services on July 1, 2020

      iv. Wrote check for $3,769 to Lawco Services on September 10, 2020

      v. Wrote check for $500 to William Philbin on December 17, 2020

      vi. Wrote check for $500 to Christine Law on December 17, 2020

      vii. Wrote check for $1,334.87 to William Philbin on January 21, 2022

   b. ACRO Services LLC, account ending in 7948 with Wilson Bank & Trust:

      i. Wrote check for $2,500 to William Philbin on January 3, 2020

ii. Wrote check for $5,213 to Lawco Services on December 17, 2020

    iii. Wrote check for $5,974.83 to Lawco Services on July 2, 2021

    iv. Wrote check for $500 to William Philbin on January 28, 2022

    v. Wrote check for $10,750 to Lawco Services on February 14, 2022

    vi. Wrote check for $10,000 to Lawco Services on March 24, 2022

    vii. Wrote check for $10,000 to Lawco Services on April 8, 2022

    viii. Wrote check for $15,000 to Lawco Services on April 21, 2022

  c. Music City Ventures, Inc. (DBA Tri Star Consumer Group), account ending in 6102 with Suntrust/Truist Bank:

    i. Wrote check for $14,229.80 to Tristar Consumer Law on January 2, 2019

    ii. Wrote check for $27,779.86 to Tristar Consumer Law on February 1, 2019

    iii. Wrote check for $22,399.87 to Tristar Consumer Law on February 25, 2019

    iv. Wrote check for $19,717.99 to Tristar Consumer Law on March 11, 2019

    v. Wrote check for $12,033.68 to Tristar Consumer Law on April 1, 2019

    vi. Wrote check for $22, 273.59 to Tristar Consumer Law on May 13, 2019

    vii. Wrote check for $14,737.42 to Tristar Consumer Law on June 24, 2019

10. I also reviewed records for a Wells Fargo bank account (ending in 4775) in the name of Lawco Services LLC, and I understand these records were produced in response to a Civil Investigative Demand issued by the FTC in this matter. Based on my review of the account information and bank statements for this account, I determined that Christine Law is listed as the owner of Lawco Services LLC and also a signer on the account. In particular, on the account application form for Lawco Services LLC dated January 6, 2020, Christine Law is listed as "Owner with Control of the Entity."

I declare under penalty of perjury that the foregoing is true and correct.

    Executed on \_\_\_\_June 14_____, 2023.

                                                            */s/ Roshni Agarwal*
                                                             Roshni Agarwal