UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, : <br>     Plaintiff, : <br> : <br> v. : <br> : <br> ACRO SERVICES LLC, et.al, : <br>     Defendants. : | Case No. 3:22-cv-00895 <br> JUDGE RICHARDSON |

**FINAL REPORT AND MOTION BY RECEIVER FOR AN ORDER: A) APPROVING THE FINAL REPORT; (B) AUTHORIZING ABANDONMENT OR TURNOVER OF RECORDS AND ASSETS HELD BY THE RECEIVER; (C) DISCHARGING AND RELEASING THE RECEIVER; (D) AUTHORIZING PAYMENT OF PROFESSIONAL FEES AND COSTS; (E) AUTHORIZING THE FINAL DISTRIBUTION OF ASSETS TO PLAINTIFF; AND (F) CLOSING THE RECEIVERSHIP AND MEMORANDUM IN SUPPORT THEREOF**

S. Gregory Hays, the Receiver (the "Receiver") appointed to administer the receivership estate created in the above-captioned case (the "Receivership"), by and through counsel, and hereby files this Final Report (the "Final Report") and Motion (the "Motion") by Receiver for an order (a) approving the Final Report; (b) authorizing abandonment or turnover of records and assets held by the Receiver; (c) discharging and releasing the Receiver and any professionals of the Receiver; (d) authorizing payment of professional fees and costs; (e) authorizing the final distribution of assets to the Plaintiff; and (f) closing the Receivership and memorandum of law in support thereof. In support of the Motion, the Receiver shows the Court as follows:

## I. Background

1. The Federal Trade Commission ("FTC") initiated this action by filing a complaint against the above-captioned defendants.

2. Pursuant to the Opinion and Order [ECF. No. 26] (the "TRO") that was entered by this Court in the above-captioned case, the Receiver was initially appointed as Receiver of the Entity Defendants (as defined in the TRO) on November 21, 2022, at the request of the FTC. The Court continued the appointment of the Receiver in the Stipulated Preliminary Injunction Order (the "Preliminary Injunction") that was entered on December 13, 2022 [ECF No. 49] (collectively with the TRO, the "Receivership Orders").

3. The Receivership Orders empower the Receiver to administer the assets subject to the Receivership Orders (the "Receivership Estate").

4. As authorized in the Receivership Orders, the Receiver employed Hays Financial Consulting, LLC, to serve as accountants and financial consultants to the Receiver, and the Law Offices of Henry F. Sewell, Jr., LLC and Manier & Herod to serve as counsel for the Receiver.

5. Consistent with the responsibilities of the Receiver to administer the assets of the Receivership Estate, the Receiver and the professionals engaged by the Receiver (the "Receiver Team") have worked diligently to administer the assets

of the Receivership Estate, liquidate certain assets of the Receivership Estate, and resolve certain liabilities.

6. Pursuant to the *Stipulated Order For Permanent Injunction And Monetary Judgment As To Defendant John Preston Thompson*, [ECF No. 83] (4/28/2023) and the *Stipulated Order For Permanent Injunction And Monetary Judgment As To Defendant John Steven Huffman*, [ECF No. 84] (4/28/2023) (collectively the "Stipulated Orders"), Messrs. Thompson and Huffman, collectively and individually, turned over to the Receiver certain assets for disposition and sale by the Receiver. The majority of these assets consisted of real property owned by Tennessee limited liability company named PTSH LLC, the membership interests of which were held by Messrs. Thompson (50%) and Huffman (50%).

7. On August 9, 2023, this Court entered its *Default Final Order For Permanent Injunction And Monetary Judgment As To Defendants Acro Services LLC, American Consumer Rights Organization, First Call Processing LLC, Music City Ventures, Inc., Nashville Tennessee Ventures, Inc., Reliance Solutions, LLC, Thacker & Associates Int'l LLC, And Consumer Protection Resources, LLC* (the "Default Judgment") (ECF No. 101). At Section IX(A), Page 19 of the Default Judgment, captioned "*Completion of Receivership*", the Court directed that the term of the Receivership be extended for a period of 180 days from the date of

3

Default Judgment. The Court directed that the term could be extended for "good cause" upon a motion of the Receiver or any party in interest. Pursuant to this provision, the Receiver's term is scheduled to expire on February 6, 2024.

8. On February 1, 2024, the Receiver filed his *Motion to Extend Receivership and Status Report* (ECF 101) wherein the Receiver requested that the Receiver's term be extended to and through June 7, 2024. The Court entered an Order granting this Motion on February 4, 2024 (ECF 114) and extended the term of the Receivership to and through June 7, 2024.

9. On June 4, 2024, the Receiver filed his *Second Motion to Extend Receivership and Status Report* (ECF No. 115) ("June 4, 24 Report") wherein the Receiver provided a detailed report regarding the status of the remaining assets of the Receivership requested that the Receiver's term be extended to and through August 6 2024. The Court entered an Order granting this Motion on June 5, 2024 (ECF No. 116) and extended the term of the Receivership to and through August 6, 2024.

## II. Status Report

10. In the June 4, 24 Status Report, the Receiver provided an updated and detailed report with respect to the remaining assets in the Receivership Estate. This Report is incorporated herein by reference.

11. Among the assets turned over to the Receiver in this Case was certain real estate turned over to the Receiver pursuant to prior orders of this Court by an entity known as PTSH LLC which, in turn, was a limited liability company owned by two of the individual Defendants herein. A total of five parcels of real estate were turned over to the Receiver by PTSH, four located in Florida and one located Tennessee. The Receiver completed a sale of one of the Florida parcels, located in Orlando, Florida, in 2023 as authorized by this Court (ECF 111).

12. As further set forth in the June 4, 24 Report, the primary purpose of seeking to extend the Receivership at that time was liquidate two of the Florida properties located in West Palm Beach, Florida as follows: 3520 Whitehall Drive, Apartment 103, West Palm Beach, Florida (the "<u>Palm Beach Condo</u>") and 2147 Ware Drive, West Palm Beach, Florida (the "<u>Palm Beach House</u>"). The Receiver reported that if these properties were sold, the Receivership could expect to receive an additional $200,000 after satisfaction of existing mortgages. The Receiver's anticipation was premised upon written payoff statements previously provided to the Receiver by Capstar Bank ("<u>Capstar</u>") for these properties which showed net equity based on the anticipated sales prices.

13. As further set forth in the June 4, 24 Report, the Receiver had determined that no equity existed in the final Florida property located at 375 S Courtenay Pkwy., #7, Merritt Island Florida (the "<u>Merritt Island Property</u>") and,

5

indeed, this property, an office condominium in an old strip mall, was in disrepair and worth substantially less than the outstanding mortgage of approximately $250,000. As the Receiver had also previously reported to the Court, the Receiver had proposed that Capstar accept a reduced payoff for the Merritt Island Property in order for the Receiver to sell that property and receive some recovery on this real estate for the Receivership Estate, but this had been rejected by Capstar.

14. As part of proceeding with the contemplated sales of the Palm Beach Condo and Palm Beach House, the Receiver requested updated payoff statements from Capstar. In late July, 2024, Capstar advised the Receiver, for the first time, that it claimed that the debt owed on the Meritt Island Property was cross collateralized with the mortgages on Palm Beach Condo and Palm Beach House (the Palm Beach Condo, Palm Beach House and Merritt Island Property shall be collectively referred to herein as the "Remaining PTSH Florida Real Estate"). Capstar accordingly demanded that the proceeds of any sale of the Palm Beach Condo and Palm Beach House include a payoff of the Merritt Island Property debt. In the year that the Receiver had been in communication with Capstar prior to receiving this notice, Capstar had never made any claim of cross collateralization with respect to the Remaining PTSH Florida Real Estate.

15. The Receiver investigated the claims asserted by Capstar and reviewed documents provided by Capstar. After reviewing these documents, the

6

Receiver determined that Capstar was correct and that the mortgages attributable to each of the Remaining PTSH Florida Real Estate properties had been cross collateralized. Indeed, the Orlando Property, sold in 2023, was also cross-collateralized, but Capstar requested only satisfaction of the mortgage attributable to the Orlando Property from that sale.

16. The Receiver determined that the amount of the debt existing on the Merritt Island Property (approximately $250,000) was more than the net equity which could be achieved from selling the Palm Beach House and Palm Beach Condo and would require the Receiver to undertake significant risk and cost in seeking to sell the Merritt Island Property. Accordingly, the Receiver determined that no net equity could be obtained from the Remaining PTSH Florida Real Estate advised the FTC that he did not believe further sale efforts were warranted.

17. Because the Receiver believes that there is no net equity in the Remaining PTSH Florida Real Estate, the Receiver has determined that the Palm Beach Condo and Palm Beach House should also be abandoned back to PTSH along with the Merritt Island Property as having no value. The Receiver is advised and informed that Capstar will seek to foreclose on all three properties

18. Finally, the Receiver has determined that the heavily mortgaged property located in Tennessee at Lot 159 Porch Swing Cove, Savannah TN (turned over by Mr. Huffman individually pursuant to the Stipulated Judgment) and 160

Porch Swing Cove, Savannah TN (PTSH Real Estate (collectively, the "Lake Lots") have no remaining value and similarly proposes to abandon them.

19. The only other assets turned over to the Receiver were small investments in companies known as Mobiley Me, Inc and Cars2Drive LLC (the "Miscellaneous Assets") which have no readily recoverable value.

20. Under the circumstances, the Receiver is hereby reports to the Court that the activities of the Receivership have substantially concluded, the duties, responsibilities and obligations of the Receiver have been substantially performed, and the grounds for the Receivership no longer exist and no cause exists to seek any continuation of the Receivership and that there is no further significant value which can be obtained from work by the Receiver. The Receiver has consulted with the FTC in reaching this conclusion.

### III. Fee Applications

21. As of the filing of this Motion, the Receiver has provided periodic reports regarding the amount of Receiver and professional fees and expenses incurred by him and his accountants and lawyer. However, no compensation or reimbursement of expenses has been approved by this Court or paid to the Receiver as of the date of this Motion.

22. Contemporaneously with the filing of this Report and Motion, the Receiver has filed his First Fee Application in which the Receiver requests the following compensation and reimbursement of expenses be approved:

| | |
|---|---|
| Receiver | $41,925.00 |
| Law Offices of Henry F. Sewell, Jr., LLC | $46,862.50[1] |
| Manier Herod | $ 6,120.00 |
| Hays Financial Consulting, LLC | $75,297.88 |
| Total | $170,205.38 |

23. Assuming the Fee Application is granted, the Receiver requests authority to pay such amounts to such professionals or such amounts as may be authorized by the Court.

### IV. Final Accounting and Turnover of Funds to the FTC

24. The Receiver is currently holding $240,368.96 in cash. All other assets of the Receivership have been liquidated or are proposed to be returned to PTSH and/or abandoned. There are no remaining obligations of the Receivership Estate. Accordingly, pursuant to the provisions of the Receiver Orders, the Receiver proposes to return the remaining cash balance after payment of

---

[1] The Sewell Firm invoice reflects a discount of $1,025. The purpose of this adjustment was to conform the total fees billed by the Receiver's professionals to a final number provided to the FTC of fees payable and remaining amount payable to the FTC.

professional fees to the FTC. The amount to be paid to the FTC, assuming the fees and expenses requested by the Receiver in the Fee Application are approved, is $70,163.58.

## V. Remaining Records

26. The Receiver is in possession of records related to this case that the Receiver will no longer need after the conclusion of this case. The Receiver asserts that the continued storage and retention of these documents is unnecessary and burdensome and proposes to abandon and dispose of same or to turnover such records to the FTC or, if so directed by the FTC, to abandon such records. The Receiver accordingly requests authority to abandon and dispose of these records and assets if, within 30 days after service of written notice to the FTC, the Receiver has not been served with a written request by the FTC for the records or a subpoena by a law enforcement agency. If during such 30-day period, the Receiver is served with a written request for the records by the FTC or subpoena by a law enforcement agency, the Receiver shall be authorized to turn over the original records to the FTC or a law enforcement agency in response to the request or subpoena.

## VI. Termination of the Receivership and Discharge and Release of Receiver

26. Upon completion of the payment of all professional fees and expenses, and turnover of cash remaining in the Receivership to the FTC, the

Receiver will file a Report of Distributions. The Receiver requests that the Receivership be deemed terminated upon the filing of the Report of Distributions without further order of this Court.

27. The Receiver requests that, subject to the terms and conditions set forth herein that the Receiver be released and discharged as Receiver in this case. The Receiver further requests that the Receiver and the professionals of the Receiver be released and discharged from any and all claims and causes of action which might be brought against the Receiver or any professionals of the Receiver for matters arising from the administration of the assets turned over to the Receiver and, to the extent that any person or entity nevertheless seeks to pursue and claim or action against the Receiver or the professionals of the Receiver arising out of the duties as Receiver, the Receiver requests that this Court retain jurisdiction to hear any such claim.

28. In order to complete the administration of and close this case, the Receiver requests that this Court enter an Order releasing and discharging the Receiver and any professionals of the Receiver and authorizing and directing the Receiver to do the following:

a) Pay such professional fees and expenses as may be authorized by this Court;

b) Abandon the Remaining Florida PTSH Real Estate, the Lake Lots and Miscellaneous Assets;

c) Turnover to the FTC the assets and funds remaining in the Receivership after payment of compensation and reimbursement of expenses as awarded by this Court;

d) To abandon or turnover to the FTC the records and assets set forth above; and

e) File a Report of Distributions.

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that this Court enter an Order, substantially in the form as the proposed Order attached hereto as "A" and incorporated herein by reference, that:

1. Deems notice of the Motion appropriate and in accordance with the prior orders of this Court.

2. Grants the Motion of the Receiver in its entirety.

3. Approves and confirms the Final Report of the Receiver and all actions and activities taken by or on behalf of the Receiver and all payments made or to be made by the Receiver in connection with the administration of the Receivership.

4. Authorizes the Receiver to abandon and destroy the electronic and paper records of any entities or businesses related to the Receivership Estate in the possession, custody or control of the Receiver as requested herein.

12

Case 3:22-cv-00895    Document 117    Filed 09/26/24    Page 12 of 18 PageID #: 2620

5. Authorizes the Receiver to abandon the Remaining Florida PTSH Real Estate, the Lake Lots and Miscellaneous Assets;

6. Authorizes the Receiver to turnover to the FTC the remaining cash of the Receivership Estate and deems all assets not distributed or otherwise administered by the Receiver as of the closing of the Receivership to be abandoned. Abandoned assets may be destroyed or discarded, without regard to title or value, in the sole and absolute discretion of the Receiver.

7. Orders that neither the Receiver nor any agent, employee, member, officer, independent contractor, attorney or representative of the Receiver shall have any liability to any person or entity for any action taken in good faith in connection with carrying out the administration of this Receivership and the exercise of any powers, duties and responsibilities in connection therewith.

8. Orders that, effective upon the completion of the final distribution of funds maintained in the Receivership and filing of the Report of Distributions, the Receiver and any agents, employees, members, officers, independent contractors, attorneys and representatives of the Receiver shall be fully: (a) discharged of all duties, responsibilities, obligations, and liabilities in connection with the administration of the Receivership and from any other obligation imposed by the Receivership Orders or any other orders of the Court; (b) released from any and all

claims and liabilities arising out of and/or pertaining to the Receivership; and (c) relieved of all liabilities, duties and responsibilities pertaining to the Receivership.

9. Approves all administrative fees and expenses incurred in this Receivership proceeding, including the fees and expenses of the Receiver and those of any professionals of the Receiver incurred in connection with the Receivership, including those previously paid to the Receiver and counsel, and approves and authorizes to be paid from assets of the Receivership all administrative expenses and professionals' fees and expenses incurred from the date of the entry of the Receivership Orders through the closing of the Receivership and the discharge of the Receiver as described in the Final Fee Application and finally allowed by the Court.

10. Authorizes the Receiver to pay all allowed administrative fees and expenses.

11. Determines that the Receiver is not responsible and has no liability for any tax returns for or related to the Receivership or any defendants in the above captioned case.

12. Indicates that the Court shall retain jurisdiction over any and all matters relating to the Receiver and the Receivership, including any matters relating to the distribution of funds received by the Receiver in connection with the obligations of the Receiver or otherwise received after the Receivership is closed.

To the extent that any dispute arises concerning the administration of the Receivership or to the extent that any person or entity seeks to pursue or assert any claim or action against the Receiver or any agent, employee, member, officer, independent contractor, attorney or representative of the Receiver, arising out of or related to this Receivership, the Court shall retain jurisdiction to hear and resolve any such dispute or claim.

13. Terminates and closes the Receivership upon the filing of the Report of Distributions.

14. Grants such other and further relief as is just and proper.

Respectfully submitted this 26th day of September, 2024.

**MANIER & HEROD, P.C.**

<u>/s/ Michael E. Collins</u>
Michael E. Collins
S. Mark Buchman
Counsel for the Receiver

1201 Demonbreun Street
Suite 900
Nashville, TN 37203
615-244-0030
Mcollins@manierherod.com

And

**LAW OFFICES OF HENRY F. SEWELL JR., LLC**

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Counsel for the Receiver
*Admitted Pro Hac Vice*

Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053

16

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:22-cv-00895 |
| | : | JUDGE RICHARDSON |
| v. | : | |
| | : | |
| ACRO SERVICES LLC, et.al, | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing *Final Report and Motion* with the Clerk of Court using the CM/ECF. I also certify that the foregoing document is being served on all parties and the persons identified below via transmission of Notice of Electronic Filing generated by CMC/ECF, which will automatically send email notification of such filing to the counsel of record, or by causing it to be sent via First Class Mail where indicated below:

MARGARET BURGESS
ALAN BAKOWSKI
NATALYA RICE
Federal Trade Commission
233 Peachtree Street, NE, Ste. 1000
Atlanta, GA 30303
Email: mburgess1@ftc.gov, abakowski@ftc.gov, nrice@ftc.gov
Via ECF only

Sean K Austin
Via Email (saaustin1997@comcast.net) and First Class Mail
105 Paddock Place Dr.
Mount Juliet, TN 37122

John Preston Thompson
Via Email (jpthompson615@comcast.net) and First Class Mail
149 Timberline Drive
Franklin TN 37069

AND

Steven Huffman
Via Email (stevemitm@gmail.com) and First Class Mail
2019 Hornsby Drive
Franklin TN 37064

        This 25th day of September, 2024.

                LAW OFFICES OF HENRY F. SEWELL JR., LLC

                */s/ Henry F. Sewell, Jr.*
                Henry F. Sewell, Jr.
                Georgia Bar No. 636265
                Counsel for the Receiver